## THREE STATES TELEPHONE CO. v. KIRKWOOD.

### No. 11222.

Court of Civil Appeals of Texas. Dallas.
April 29, 1933.

Rehearing Denied May 27, 1933.

Leachman & Gardere, of Dallas, for appellant.

Truett, Abernathy & Wolford, of McKinney, for appellee.

BOND, Justice.

This cause reaches this court from the district court of Collin county. Appellee, Joe Kirkwood, brought suit against appellant, Three States Telephone Company, to recover damages for personal injuries sustained by him, alleged to have been caused by the negligence of appellant in constructing and maintaining a telephone line across a public highway. Appellee alleged that he was standing in the back of a truck, and while traveling over the highway he came in contact with appellant's wire, which appellant constructed across the road, and allowed to sag at such a low elevation as to obstruct traffic, and to constitute a constant menace and danger to the traveling public; that the line was attached to a small post on the opposite side of the road from its main line, and had no supporting wires to prevent sagging toward the ground; that appellant knew, or by the exercise of reasonable diligence could have known, of the dangerous condition of its said line.

Appellant answered by general demurrer, general denial, special pleas of unavoidable accident, and contributory negligence. The case was submitted to a jury on special issues and, on the verdict of the jury, judgment was rendered in favor of appellee for the sum of his injuries—viz., $1,800.

Appellant seeks a reversal of the judgment of the court below on several propositions of law germane to pertinent assignments, which we severally consider and record our findings and conclusions anent thereto.

Appellant's first and second propositions: "Where counsel for plaintiff argued to the jury that the penal statutes of this State limit the height of loaded trucks on the highway to twelve feet six inches, thereby permitting a truck of that height to be operated over the highway, and, in connection with said argument, defendant was negligent in maintaining a telephone line across the highway at a height of eleven feet, it is error for the trial court to refuse to sustain the objection of the defendant to such argument," and "that the argument was error, improper, inflamatory and prejudicial, as the statute referred to was neither supported by pleadings nor evidence, nor warranted by anything in the record."

The record reveals that A. M. Wolford, counsel for appellee, while making an argument to the jury with regard to the height of the telephone line involved, and the fact that appellant knew, or by the exercise of reasonable diligence should have known, that the height of the wire was dangerous, used the following language: "The statute—that is not submitted to you in the court's charge makes twelve feet and six inches the height for trucks to operate on our highways. The law is that a truck upon the road, with reference to the height of the load permitted, is. twelve feet and six inches, the telephone company is presumed to know that law just as every man is presumed to know the law of the land, and then, when they come along, knowing that a load is permitted upon the road, the height which is twelve feet and six inches, and according to that testimony, put their tap line across the road on an eleven foot pole, we submit to you that they failed to show the care for the safety of people using that road of an ordinary prudent person."

We do not agree that the argument was improper; it was permissible under the pleadings and predicated on a reasonable interpretation of the evidence. Appellee based his suit on the allegations that appellant was negligent in maintaining its line suspended at such a height across a public highway as to be dangerous to the traveling public using said road, and that it knew, or by the exercise of reasonable diligence it could have known, of the dangerous condition of the line. Appellant denied the existence of the dangerous condition and especially alleged that the height of its line was eleven feet six inches, and that appellee was guilty of contributory negligence in placing himself on the truck at a height unusual with the traffic on said highway. The evidence shows that the line across the highway was suspended at a height from eight to twelve feet from the crown of the road, the testimony is conflicting as to the height of the telephone line. The court submitted to the jury the issues thus raised by

the pleading and evidence, of which there is no complaint.

■ There is no regulatory provision in our statute as to the height of telephone lines crossing a public highway, but there is now, and was at the time of trial, a provision as to the height of vehicles using such highways, that is, "no vehicle unladen or with load shall exceed a height of twelve feet six inches (12' 6")" (article 827a, § 3(b), Penal Code, Acts 42nd Legislature, 1931, c. 282, § 3, Vernon's Ann. P. C. art. 827a, § 3(b), and that at the time of the injury the height was regulated not to exceed fourteen feet six inches; therefore, the isssue as to the line construction and maintenance being dangerous to the traveling public becomes one of fact for the determination of a jury.

■ The language of counsel may well be denominated as argument bearing directly on the issues involved, the admissibility of which is addressed primarily to the discretion of the trial court, and unless that discretion is abused, an appellate court will not reverse the case because of such argument. St. Louis S. W. R. Co. of Texas v. Ross, 55 Tex. Civ. App. 622, 119 S. W. 725. We conclude no error is shown.

■ Appellant's third proposition: "After the jury had retired, it was error for the trial court to instruct them as to the effect of a 'yes' or 'no' answer to the special issue on 'unavoidable accident', because such instruction was a general charge on the burden of proof, and informed the jury of the effect of their answer to such issue."

The record reflects that the trial court gave to the jury a correctly framed special issue with necessary explanations and definitions on "unavoidable accident," and that, after the jury had retired for a discussion of the issues, it sent a message to the trial court, seeking an explanation as to special issue No. 17, and, over the objection of appellant, the court presented to the jury the following instruction: "Gentlemen of the Jury: The question propounded to the court by the jury is as follows: 'The jury does not understand the Special Issue No. 17. Will you give an explanation of this Special Issue?' Special Issue No. 17 reads as follows: 'Do you find from a preponderance of the evidence that the injuries received by plaintiff on the occasion in question were not the result of an unavoidable accident, as that term is herein defined?' You are instructed to answer 'yes' or 'no'. The court instructs you as follows: 'If you answer said Special Issue No. 17 'Yes', it means that you have found that the injuries received by the plaintiff on the occasion in question were not the result of an unavoidable accident. On the other hand, if you answer Special Issue No. 17 'no', it means that you have found that the injuries received by plaintiff upon the occasion in question were the result of an un-

avoidable accident. But in this connection, you are instructed that before you answer Special Issue No. 17 'yes', you must find from the preponderance of the evidence that plaintiff's injuries upon the occasion in question did not result from an unavoidable accident. Otherwise, unless you so find, you must answer Special Issue No. 17 'no'."

It is very evident that special issue No. 17 is confusing, couched in rhetorical phraseology of a double negative, and we believe that the jury was justified in seeking the information to enable it to answer the question so as to reflect its conclusion. It could hardly be expected that they would have been able to interpret its meaning without such aid. A better practice, however, is for the trial court, in the main charge, to instruct the jury to answer the question: "It was an unavoidable accident," or "It was not an unavoidable accident," rather than to answer "yes," or "no." The form of the question has been approved by the holdings of the courts of this state and trial courts are justified in adopting such holdings, notwithstanding the confusion which it engenders, and to give such explanation to reach a correct determination of the issue involved.

The court gives to the jury, in the supplemental instruction, only such further necessary explanation not embodied in its main charge, as to enable the jury to know what fact would be reflected by a "yes" answer and by a "no" answer, and disclosed to the jury that the burden of proof was on appellee. Such instruction does not disclose to the jury the legal effect of their answer, and properly reserves the rights of the parties. It is not subject to the imputation and construction of being a general charge, or appertaining to the vice of undertaking to give to the jury instructions prohibited perforce of article 2189, R. C. S., relating to special issues.

■ Appellant's propositions Nos. 4 and 5: "The trial court erred in defining 'proximate cause' because the court did not instruct the jury that, in order to be a proximate cause the result must follow through an unbroken and continuous sequence of events." The court "erred in defining 'proximate cause' because the court did not instruct the jury that, in order to be a proximate cause, it must have been foreseeable by a person of ordinary prudence that the injury, or some like injury, would naturally and probably result in the light of the attending circumstances."

The charge of the court, we believe, embodies a correct definition of "proximate cause," bearing directly upon the causal connection between the negligence of appellant and the injuries of appellee, unbroken by any new or independent cause, as revealed by the record. The court gave to the jury the following definition of "proximate cause," as pertaining to the submitted issue involved:

"By the expression, 'proximate cause', whereever used in this charge, is meant a cause without which the injury would not have happened, and from which that injury, or some like injury might reasonably have been anticipated in the light of attending circumstances, as a natural and probable consequence. To constitute the negligent act or proximate cause, it need not be the sole cause, but is sufficient if it be a concurring cause from which such result might reasonably have been contemplated as involving the result under the attending circumstances."

There is no evidence disclosed in the record as to any intervening cause, and all matters complained of are fully imputed in the definition of proximate cause, given by the court. As was said in Texas & P. R. Co. v. Bufkin (Tex. Civ. App.) 46 S.W.(2d) 714, 716: "In the first place, it is not essential that a good definition of 'proximate cause' expressly and by direct mention exclude a 'new and independent cause.' It is sufficient, by the use of other words, to exclude same, * * * in the definition given, by the use of the words 'and, without which the injury and damages would not have happened, and the happening of which might reasonably have been anticipated as a natural and probable consequence.' A cause, but for which injury would not have happened, and the happening of which (injury) might reasonably have been anticipated as a natural and probable consequence thereof, just as effectually excludes any new and independent cause as if the definition did so in express words. Such, in effect, was the decision we reached in West Texas Coaches v. Madi (Tex. Civ. App.) 15 S.W.(2d) 170."

We fail to see error in the submitted charge; therefore, the assignment in reference thereto is expressly overruled.

▆▆▆▆ Appellant's sixth proposition: "It was error for the trial court to refuse to set aside the verdict of the jury and grant a new trial when it was assigned as error and was a fact that the verdict of the jury was so excessive as to show bias, prejudice or some other improper motive on the part of the jury, and was not based on the evidence."

In suits for damages for physical and mental pain, the law furnishes no legal rule for measuring such damages; the amount to be determined rests largely in the discretion of the jury. In Tex. Jur. vol. 13 § 148, the rule is thus stated: "The general rule is well set-tled that where the law furnishes no legal measure of damages, and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is the result of passion, prejudice or corruption, or that the evidence has been disregarded, their verdict is conclusive and will not be set aside as excessive, either by the trial court or on appeal."

The character and effect of appellee's injuries, as related by his attending physician, Dr. B. F. Largent, are as follows: "* * * He had some injuries—he had a laceration extending from the corner of the mouth almost to the ear practically to the ear, clear through the cheek. * * * He had lost a considerable amount of blood and had a great deal of pain, * * * it did develop an infection which was an extremely dangerous one. The wound was of such a nature that it required him to remain in bed and of such a nature as to require hospital attention. He was in the hospital for several weeks, * * * possibly four or five or six weeks. That cut has completely healed now. With reference to the nerves that are cut I will say that nerves that are cut do not heal again. The scar that is left there is necessarily rough because he had a great deal of infection in it. The scar is rough not only on the outside but on the inside, it is rough on both sides. He has a ridge on the inside of his mouth between the mucous membrane and the inside of his mouth that will always remain there. That scar will not disappear but he will keep it. The scar has contracted considerably. It is about three and a half or four inches long now it has contracted considerably. The scar is on the right side of his face. * * *"

The jury exercised the discretion imposed upon it by law, they were the supreme arbiters of that matter, and in the absence of a showing that they were moved by bias, prejudice, or impure motives, or that the amount of the award is manifestly excessive, the verdict should not be disturbed. We cannot determine that the limit and control of the jury's discretion in this case exists.

All of appellant's propositions have been discussed, and from what we have said, reviewing the record as presented, we find no error in appellant's assignments. Judgment of the lower court is affirmed.

Affirmed.