### GIUN et al. v. GULF C. & S. F. RY. CO.
#### No. 8151.

Court of Civil Appeals of Texas. Austin.

Nov. 20, 1935.

Rehearing Denied Dec. 11, 1935.

Kerr & Gayer, of San Angelo, for appellants.

Harris, Harris & Sedberry, of San Angelo, Wren, Pearson & Jeffrey, of Fort Worth, and Terry, Cavin & Mills, of Galveston, for appellee.

BAUGH, Justice.

Maria Giun, for herself and as next friend of her minor children, brought this suit in September, 1933, against the Railway Company for damages for negligently causing the death in November, 1924, of Madeo Giun, her husband and father of said minor children. Madeo Giun was killed on November 4, 1924. He was run over by one of appellee's trains in the daytime on a straight track about fourteen miles from San Angelo, at a point where its right of way was fenced. Appellant alleged that the deceased undertook to walk across appellee's track at this point, and got his foot hung between a protruding spike and the rail; that as the

train approached he waved to the crew to stop it in ample time for them to have done so after they discovered his presence on the track; and that they negligently failed to do so, but ran over and killed him.

In defense, among other things, the defendant alleged, in substance, that the deceased came upon its right of way as the train approached, stood near the track watching it until it was near him, then fell across the track in front of it. In effect, that he committed suicide. Appellee also pleaded the statute of limitation to the surviving wife's cause of action, which plea was by the plaintiffs admitted to be good, and was sustained. Trial was to a jury on special issues, and upon their answers thereto judgment rendered for the defendant, from which the plaintiffs have appealed.

The first contention made by appellants is that the court erred in submitting in the form it did, at appellee's request, special issue No. 1, over their objection to it on the ground that it was "calculated to be confusing to the jury." The issue submitted reads as follows: "Do you find from a preponderance of the evidence that the deceased's death was not the result of an unavoidable accident, as that term is defined in Defendant's Requested Charge No. 1? Answer, Yes or No."

To this question the jury answered, "No."

The term "unavoidable accident" was properly defined by the court. The objection was that the question contained a double negative and required a negative word to indicate an affirmative answer.

▉ If the issue of unavoidable accident was raised by the evidence, it was of course proper to submit it; and the burden was upon the plaintiffs to show that the accident was not unavoidable. Rosenthal Dry Goods Co. v. Hillebrandt (Tex. Com.App.) 7 S.W.(2d) 521, 523. It was the duty of the plaintiffs·to show negligence on the part of the Railway Company, and if the accident was unavoidable, that is, if it occurred without the negligence of either party, the Railway Company would not be liable.

With the burden of proof upon plaintiffs to show that death did not result from unavoidable accident, the issue necessarily involves the finding of a negative fact. And it has been frequently held that the submission of this issue in the affirmative

with instructions to the jury to answer same from a preponderance of the evidence erroneously places the burden of proof. See Texas Electric Ry. v. Scott (Tex.Civ.App.) 21 S.W.(2d) 24, 25; United States Torpedo Co. v. Huff (Tex.Civ. App.) 41 S.W.(2d) 296, 297; Stedman Fruit Co. v. Smith (Tex.Civ.App.) 45 S. W.(2d) 804, 805. While, as stated in Three States Tel. Co. v. Kirkwood (Tex. Civ.App.) 61 S.W.(2d) 568, 570, the submission of this issue in the double negative form has been sustained, and the submission in an affirmative form to be answered "from the preponderance of the evidence" has been condemned; we do not understand the rule to be that such issue can be·submitted only in the double negative form, with proper instructions to the jury to make clear the import of their answers thereto. We see no good reason why such issue could not be submitted more simply, with a proper instruction as to the burden of proof on such issue. As submitted in this case, without any explanation, we think the issue was undoubtedly confusing to the average jury. When so submitted, we think its submission should be accompanied with such further instructions by the trial court, as suggested in Three States Tel. Co. v. Kirkwood, supra, as would enable the jury to comprehend and understand the significance of their answer thereto, whether in the affirmative or in the negative. The method suggested by the court in the Kirkwood Case, supra, appeals to us as being practical and clarifying.

▉ The next contention made by appellants is that the court erred in refusing to permit Maria Giun to testify as to a conversation with the engineer through an interpreter soon after she arrived at the place where the accident occurred. Though there was no affirmative proof to that effect, it is fair to assume that Maria Giun could not understand English and that the engineer could not understand Mexican. These Mexicans were camped about a mile from where the accident occurred. The time elapsing after Madeo was killed and before Maria arrived at the scene was variously fixed at from thirty minutes to an hour. She offered to testify that the engineer told her through an interpreter that he saw Madeo on the track waving to the train some 1,200 feet before it ran over him. The interpreter was another Mexican who came to the scene of the accident with Maria, but whose

whereabouts at the time of the trial was unknown. When the testimony as to this conversation was offered, the record shows that the following occurred:

"We make the objection that the interpreter himself would have to be present and placed under oath to give that testimony before we would be in anywise bound by it as being what the engineer said. We know nothing about the ability of the interpreter and his truthfulness, and it is an ex parte statement as to us.

"Q. Did the engineer ask this woman to interpret for him?

"Mr. Jeffrey: She has already testified directly that she asked for the interpreter—that he interpreted to her.

"The Court: I sustain the objection."

It is not clear upon what grounds the court excluded the testimony. It was not an ex parte statement because both parties were present and it related to a purported conversation between them. Nor was it necessary, in order to make such conversation admissible, for the interpreter to be present and placed under oath. Nor could it properly have been excluded, as now contended by appellee, on the ground that it was hearsay. The rule announced in 1 Greenleaf on Evidence, § 183, is: "This principle extends to the case of an interpreter whose statements of what the party says are treated as identical with the party himself; and therefore may be proved by any person who heard them, without calling the interpreter." And where the interpreter acts as the agent of the parties, he is not required to be sworn. Davis v. First Nat. Bank, 6 Ind.Terr. 124, 89 S.W. 1015, 25 L.R.A. (N.S.) 760. Where two parties, unable to communicate with each other because of diversities of language, agree upon or accept the medium of an interpreter, "the words of the interpreter, which are their necessary medium of communication, are adopted by both, and made a part of their conversation as much as those which fall from their own lips." Commonwealth v. Vose, 157 Mass. 393, 32 N.E. 355, 17 L. R.A. 813; Kelly v. Ning Yung Benev. Ass'n, 2 Cal.App. 460, 84 P. 321; Terrapin v. Barker, 26 Okl. 93, 99, 109 P. 931; Sertaut v. Crane Co., 142 Ill.App. 49, 60. The ability of the interpreter, or his credibility, affects the weight and not the competency of such testimony. Commonwealth v. Vose, supra; 10 R.C.L. § 95, p. 930. Where the conversations are between the parties interested, the hearsay rule does not apply, and it is not necessary to call the interpreter. Wigmore on Evid., vol. 1, § 812, p. 917, vol. 3, § 1810, p. 2346. In such cases, of course, one party is not bound to accept an interpreter furnished by the other, and he may decline to do so. But where he does accept the services of such interpreter, and enters into a conversation through such interpreter without objection, the rule above announced would apply.

It is urged by appellee that the interpreter, if such there was, in the instant case, was furnished by Maria Giun. The fact that such interpreter came with Maria to the scene of the accident would be immaterial if the engineer agreed to communicate with Maria through him. It is to be noted that when Maria was asked whether the engineer asked such party to interpret for him, the objection of appellee was sustained. When the engineer was on the witness stand, he was not interrogated about this matter at all. While the trial court would have been justified in requiring a fuller showing, in keeping with the rules above announced, before admitting such proffered testimony, it is obvious, we think, that it was excluded on untenable grounds and erroneously so.

The remaining contention of appellants relates to argument of appellee's counsel to the jury. The court's qualification of the bill of exception shows that same was not objected to at the time, and that such argument was discussed and replied to by appellants' counsel in his closing argument. Appellants urge, however, that it was of such injurious character that the court should have instructed them with reference thereto on its own accord; and that they can therefore complain of it for the first time on appeal.

One of appellee's witnesses testified that she was driving a truck on the highway along side the railroad right of way at the time. That the deceased Mexican stopped in the road immediately in front of her truck, causing her to run into the ditch to avoid hitting him. That she thereupon watched him and saw him go upon the right of way of appellee and up to the track as the train approached, and throw himself or fall upon the track just ahead of the train. Following her testimony, a peace officer of some thirty years' service as such, who was in the courtroom was

called as a witness, testified that he had known the witness at Carlsbad and in the oil fields for eight or ten years, and that he knew her reputation for truth and veracity to be bad.

In commenting upon this appellee's counsel, after having singled out and called one of the jurors by name several times, stated to the jury that he did not know that the reputation of said witness was bad at the time he offered her testimony, nor did he know that it was questioned until he heard the testimony of the impeaching witness. While it may be that appellants' assignment is duplicitous, in view of another trial it is pertinent to say that the practice of making appeals to jurors personally and calling them by name is improper. Orchin v. Fort Worth Poultry & Egg Co. (Tex.Civ.App.) 43 S.W. (2d) 308, and cases therein cited; Dixie Motor Coach Corporation v. Eugene Galvan (Tex.Com.App. Oct. 23, 1935) 86 S.W.(2d) 633. Nor is it proper for an attorney, where one of his witnesses is impeached, to undertake to vitiate such impeachment by his own statements to the jury in argument of matters not disclosed by the evidence. These matters need not occur upon another trial, and we deem further discussion of them here unnecessary.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for another trial.