J. J. BUSBY V. GRACE E. JONES.

No. 7407. Decided November 29, 1939.
Rehearing overruled January 10, 1940.
(133 S. W., 2d Series, 566.)

*Boone, Henderson, Boone & Davis,* of Corpus Christi, for plaintiff in error.

Where the evidence establishes the fact that notes have been paid off and discharged prior to the attempted renewal of same by Collier and his wife the renewal note and extension agreement executed by them were ineffectual either to renew the debt or to establish the lien, as the debt having been paid the lien was extinguished. Holford v. Petterson, 257 S. W. 213; Flewellen v. Cochran, 48 S. W. 39.

On the question as to whether plaintiff was an innocent purchaser. Moody & Co. v. Martin, 117 S. W. 1015; Weinert v.

Cooper, 107 S. W. (2d) 593; McWhorter v. Oliver, 2 S. W. (2d) 281.

*Sidney P. Chandler,* of Corpus Christi, for defendant in error.

Mr. Judge German delivered the opinion of the Commission of Appeals, Section A.

In July, 1923, H. B. Baldwin conveyed to Nowlin Collier and wife a tract of 280 acres of land in Nueces County, Texas. As a part of the consideration Nowlin Collier and wife executed ten vendor's lien notes, each for the sum of $1000.00. Notes Nos. 1 and 2 of this series of notes are the basis of this suit. Note No. 1. was due October 1, 1924, and Note No. 2 was due October 1, 1925. In said conveyance the Colliers also assumed payment of an indebtedness of $12,600 due the San Antonio Joint Stock Land Bank.

October 2, 1923, Baldwin assigned the ten notes mentioned above to Guaranty Title Company, of which he was President. On the same date Nowlin Collier and wife conveyed the 280 acres of land to Wiley Davis, who assumed payment of said ten notes, and also the $12,600 due the San Antonio Joint Stock Land Bank. They further executed one note for $841.00 payable to Nowlin Collier. On October 1, 1924, a payment of $539.55 was made on said Note No. 1.

September 3, 1925, Wiley Davis, acting through I. N. Conyers as his agent, entered into a contract of sale of the 280 acres of land with J. J. Busby. The consideration recited in the contract was the sum of $37,800. Of this amount the sum of $13,952.50 was to be in cash (really to be paid by exchange of property), and the assumption of certain indebtedness, recited to be as follows:

"Sixteen Thousand Dollars now being negotiated with the Earsons & Taft Loan Company, it being contemplated that said loan will be consummated by the time for delivery of deeds herein provided for; a balance of Six Thousand Six Hundred Forty-six and 50/100 Dollars, which will be owing to the Baldwin Land Company, of Corpus Christi, Texas, after payment to them of surplus proceeds of loan above mentioned; Eight Hundred Forty-one Dollars to Nowlin Collier."

For some reason the trade between Davis and Busby was delayed and litigation arose between them. Davis sought an injunction to prevent Busby from taking possession of the land, and in cross action Busby sought specific performance. On

March 5, 1926, judgment was entered in favor of Busby, and Davis was directed to execute deed conveying the 280 acres of land. In pursuance of said decree, Davis and wife delivered to Busby a deed of conveyance to said 280 acres of land. We note that said deed was dated September 9, 1925, just a few days after execution of the original contract of sale, but evidently it was not delivered as a conveyance until long after entry of the judgment of March 5, 1926. The clause in this deed showing assumption of indebtedness as a part of the consideration is substantially in the same language as is quoted above from the contract of sale.

In the interim between the date of the contract and the date of delivery of the deed from Davis to Busby two things occurred which have an important bearing upon the case:

First. The contemplated loan by Earson and Taft Loan Company, referred to in the contract and the deed, failed in its consummation, leaving the indebtedness to be assumed unidentified, except by inference and by resort to parol proof.

Second. Notes 1 and 2 of the original series of ten notes had become due, the first as of date October 1, 1924, and the second as of date October 1, 1925. The Guaranty Title Company was insisting upon payment, and threatening to foreclose as to said notes under a deed of trust. In order to prevent said foreclosure and interference thereby with the sale by Davis to Busby, I. N. Conyers, the agent of Davis, paid the balance of said Note No. 1 and Note No. 2 to Guaranty Title Company, amounting to $1465.00. The question of whether or not Conyers, paid said notes for Davis and was afterwards repaid by Davis, or whether he paid said notes on his own behalf and had them assigned to himself, will be discussed later.

Although Conyers paid the amount of said Notes Nos. 1 and 2 to the Guaranty Title Company in October, 1925, he did not attempt to get a written assignment of these notes and the lien securing same until in June, 1926. On June 23, 1926, Baldwin, as President of said Guaranty Title Company, executed and delivered an assignment of these notes and the lien securing same, but expressly made said lien subordinate to the lien securing the remaining eight notes of the series.

■ After obtaining the assignment above mentioned, Conyers on May 24, 1937, obtained from Nowlin Collier and wife what purports to be a renewal note in the sum of $1630.45, due October 1, 1928. In this instrument it is recited that same is in renewal of the balance due on Notes Nos. 1 and 2 herein-

before mentioned. This instrument also purported to renew the vendor's lien mentioned in said notes. On the same date Conyers also had Nowlin Collier and wife to execute an extension contract, such as is contemplated by Article 5522 of the Revised Statutes of 1925. This instrument, after making reference to Notes Nos. 1 and 2 of the series of October 1, 1923, contained, among other things, the following:

"And we, Nowlin Collier and wife, Dollie Collier, have this day executed our new note in the principal sum of One Thousand Six Hundred Thirty Dollars and Forty Five Cents for the purpose of a renewal of said notes One and Two and to pay accrued interest on the same, and said renewal note, it is understood, is to take the place of said Notes One and Two and said lien on said property to have the same preference as to priority as if it were made at the time that said Notes Nos. One and Two, were made, and subject to the provisions of a transfer made by H. B. Baldwin as President of the Guaranty Title Company to I. N. Conyers on the 23rd day of June, A. D. 1926. *No personal liability on Makers.*" (Emphasis ours.)

We may interpolate here that in our opinion it is manifest that the clause, "No personal liability on Makers," had direct reference to the so-called renewal note.

On August 26, 1927, in some kind of business transaction between himself and Grace E. Jones, Conyers assigned the renewal note, with the purported lien securing same, to Grace E. Jones. This assignment contains the following: "It is expressly agreed and stipulated that this transfer and assignment is made without recourse on me." Contemporaneously with this assignment Conyers delivered to Grace E. Jones the renewal note and the extension agreement executed by Collier and wife, containing the provisions "No personal liability on the part of Makers."

The present suit was instituted in the District Court of Nueces County October 17, 1929, by Grace E. Jones as plaintiff, and she will be designated plaintiff here. It was against J. J. Busby as defendant, and he will bear that designation here. The suit was predicated upon said renewal note of May 24, 1927, and the extension agreement, but plaintiff did not seek a personal judgment upon said note. She only sought to establish the amount of said note, interest and attorney's fees, and to obtain a foreclosure of vendor's lien on the land as against Busby. Plaintiff's petition sets out fully all the facts pertaining to the execution of original Notes Nos. 1 and 2, the pur-

ported transfer of same, and the purported renewal, as well as the extension agreement of May 24, 1927. Defendant Busby set up two principal defenses. In the first place, he contended that when Notes Nos. 1 and 2· were paid by Conyers to the Guaranty Title Company, the same were paid by Conyers for account of Wiley Davis (Busby's vendor), were marked paid and surrendered to Conyers, who in turn was repaid by Davis, and who surrendered said cancelled notes to Davis; that the attempted renewal of said notes was fraudulent and void, and the transaction of May 24, 1927, between Collier and wife on the one part and Conyers on the other part constituted an attempt to renew and extend the prior lien without renewing and extending the indebtedness, and was therefore of no force and effect. In the second place, he contended that as Notes Nos. 1 and 2 were paid by Davis long before consummation of the sale of the land by Davis to Busby, there was no intention on his part, or on the part of Davis, that the assumption set out in the deed was to include these notes; that therefore, in truth and in fact, there was no lien retained in the conveyance to him securing the so-called renewal indebtedness.

The trial court instructed a verdict in favor of plaintiff, Grace E. Jones, establishing lien upon the land in question to secure the payment of $3018.58, with interest at the rate of 7 per cent per annum from date of judgment. No personal judgment was entered in favor of plaintiff. There was judgment in favor of defendant Busby over and against Nowlin Collier, I. N. Conyers and Willie Davis, but upon what theory is not clearly shown. That part of the judgment is not before us. This judgment of the trial court was affirmed by the Court of Civil Appeals 113 S. W. (2d) 335.

■ The foregoing statement, together with what is to be hereinafter stated, clearly shows that there was error in instructing a verdict in favor of plaintiff. We have carefully read the entire record and think the evidence shows beyond doubt that Notes Nos. 1 and 2 were paid by Davis, and the lien to that extent was extinguished, long before the purported assignment by Guaranty Title Company to Conyers; and further shows that these notes were not included in the assumption of indebtedness by Busby. Therefore there was no lien against the land by virtue of the so-called renewal note.

It becomes necessary to first consider the assumption clause in the deed by Davis to Busby. It will be observed that it included, first, the assumption of $16,000 "owing to Earson and Taft Loan Company, secured by deed of trust on· the here-

inafter described premises." It next included the assumption of $6,646.50 on the indebtedness due the Guaranty Title Company, which would remain after paying off some of the ten vendor's lien notes. It must be remembered, however, that the contract and the deed containing this assumption clause were written a year or more before the deed was delivered. In the meantime, the loan mentioned had fallen through, and Notes Nos. 1 and 2 had been paid. This clause, therefore, on its face is meaningless. The real indebtedness assumed and the true amount of same could be shown only by parol evidence. The proof disclosed by the record shows beyond question that the parties not only regarded Notes Nos. 1 and 2 as fully paid, but did not consider same included in the assumption clause of the deed.

H. B. Baldwin testified that when Conyers paid Notes 1 and 2 to the Guaranty Title Company they were marked paid and delivered to him; that this was their usual custom. He further testified that when Conyers came back some eight months later and requested a transfer of the lien, he objected because he thought it was not proper to give such a transfer; but that he later executed the transfer upon the assurance of Conyers and Davis' attorney that it was proper. In the suit between Davis and Busby, Conyers testified that these notes were paid by him for Davis, and that Davis later repaid him the amount. Davis testified by depositions to the effect that Conyers paid these notes as his agent, and that in a settlement between himself and Conyers he fully repaid Conyers the amount paid on the note. He expressly stated as follows: "I. N. Conyers delivered the note he had paid off for me to me, and at his request I mailed it back to him some four or five months after he had delivered it to me." We think the true facts with reference to this transaction are put to rest by certain correspondence which took place between Conyers and Davis. On January 7, 1926, Conyers wrote to Davis, who was then at Groesbeck, Texas, and enclosed form of a letter which he requested Davis to rewrite in his own handwriting, "word for word." This letter was to be addressed to Boone and Savage, Attorneys at Corpus Christi. In pursuance of this request Davis did copy the letter in his own handwriting, signed it, and mailed same to Boone and Savage. Both the copy which was sent by Conyers to Davis and the letter which was written by Davis to Boone and Savage were offered in evidence. The letter thus prepared by Conyers and signed by Davis, addressed to Boone and Savage, was as follows:

"Your letter of the 2nd, received and in reply to same will state on account of Mr. Busby delaying his papers I was forced to pay $1465.00 to the Baldwin Land Company. Account of this payment by me to Baldwin makes a difference in the exact amount due on the land; therefore the deed that I sent Mr. Busby does not represent the exact amount outstanding indebtedness against the land, the amount now being as follows:

"The San Antonio Joint Stock Land Bank of San Antonio $12,360.00, and interest of $432.10, a total to them of $12,-792.10; to the Baldwin Land Company $8,000.00, due $1,000.00 per year October 1st 1926 to October 1st 1934; Nowlin Collier note for $841.00 now due, being due January 1st 1926. You can rewrite the deed from me to Busby and send same to me or either of the banks in Groesbeck, together with a Houston or Dallas exchange for $1465.00 and instruct the bank here to pay me same in cash here on delivering to them the deed properly signed by me and wife, this will total the exact amount Mr. Busby was to pay me for my 280 acres of land in Nueces County, less $389.40 of credits on the amount owed Baldwin since the trade was made from the proceeds of the crop. If Mr. Busby can not pay the $1465.00 now, I would accept a vendor's lien note secured by the land for that amount ($1465.00) bearing eight per cent interest, due and payable at Groesbeck, Texas, October 1st, 1926."

This letter, thus prepared by Conyers and written by Davis, shows, (a) that Davis and not Conyers paid the balance on Notes Nos. 1 and 2 amounting to $1465; (b) that the indebtedness mentioned in the deed from Davis to Busby, which had been prepared but which had not yet been delivered, did not state the correct amount of outstanding indebtedness; (c) that these two notes, due respectively October 1, 1924, and October 1, 1925, were not to be included in the amount to be assumed by Busby; and (d) that Davis and Conyers intended to undertake to hold Busby for the payment of the $1465 in some manner aside from the transaction in question.

This last conclusion is strongly supported by the testimony of Davis. After testifying that Conyers delivered the notes to him (Davis), he testified as follows:

"Some four or five months after that time, he asked me to send the note or notes to him so that he could make a settlement with Mr. J. J. Busby. My recollection is that there was just one note. I mailed this note to Mr. Conyers, as requested. I have since that time endeavored to get this note back from I. N. Conyers. Mr. Conyers told me that he threw the note

that I had sent him in the waste basket and that he supposed it had been burned up. He said he thought it was no good, as he could not get a settlement with Mr. J. J. Busby."

In light of the foregoing letter, as well as the other evidence in the record, it is clear that the attempt on the part of Conyers to make it appear that he had paid Notes Nos. 1 and 2, and to claim a transfer of the lien in his own favor to secure this indebtedness, was purely an after-thought. Without an actual payment of these notes on his part in his own behalf, and without a bona fide transfer of the vendor's lien securing same, Conyers could not possibly have any cause of action; and Grace E. Jones, holding under him, under the circumstances of this record, as hereinafter set forth, could have no better right than Conyers. As the notes were paid in October, 1925, the original vendor's lien to that extent was discharged, and Nowlin Collier and wife were without power to create a new lien, especially when they expressly refused to renew the debt,— as they manifestly did. Nor could Conyers have a lien by subordination. Davis, having paid the notes, might have perpetuated the lien by having it expressly assumed and carried forward in the conveyance, but this he did not do. However, if it could be said that Davis did have a lien by *assumption,* this could not help Conyers, who attempted to revive and extend the old vendor's lien retained in 1923. Plaintiff did not in fact rely upon the assumption, but only upon the original vendor's lien.

But plaintiff claims protection as a purchaser for value under the Negotiable Instrument Law. Plaintiff expressly pleaded and relied upon the extension agreement of May 24, 1927, which was executed contemporaneously with the renewal note. Both of the original notes would have been barred at the time suit was filed but for such extension. Both of the notes were past due when the renewal note and extension agreement were executed; therefore plaintiff could not be protected as a purchaser for value in the absence of those instruments. Having expressly pleaded and relied upon the extension agreement, plaintiff became bound by each and all of its provisions, including the provision that there was no personal liability on the part of the makers of the renewal note. Manning v. Christian, 124 Texas 517, 81 S. W. (2d) 54; Cain v. Bonner, 108 Texas 399, 194 S. W. 1098. As to plaintiff, under the circumstances, the renewal note and extension agreement must be treated as one instrument. As the note created no personal liability, it was not a negotiable instrument. Wood v. Sparks, 59 S. W.

(2d) 361. It was not even an evidence of debt. Plaintiff clearly recognized this in bringing her suit, as she did not seek personal liability on the note. We are unable to see how the original makers of the notes, after having parted with title to the land, could renew and extend the lien without renewing and extending the indebtedness. Even if the debt had not been paid, when Conyers accepted the renewal note, in lieu of the original notes, with the express provision that the makers were not liable, this necessarily had the effect of extinguishing the old debt. It is evident that the acceptance by plaintiff of the renewal note and the contemporaneous extension agreement, showing that there was no longer personal liability for the debt, put her upon inquiry to ascertain just why the debt no longer existed. She would be charged, as a matter of law, with knowing that if the debt was discharged the lien was also discharged.

The case appears to have been fully developed upon the facts. We therefore reverse the judgments of the Court of Civil Appeals and of the trial court and here render judgment that plaintiff, Grace E. Jones, take nothing in the way of a lien upon the land in question.

■ As the judgment in favor of defendant Busby over and against Nowlin Collier, I. N. Conyers and Wiley Davis was predicated upon the judgment in favor of plaintiff against defendant Busby, that part of the judgment must necessarily fail, and is hereby reversed and held for naught.

Opinion adopted by the Supreme Court November 29, 1939.

Rehearing overruled January 10, 1940.