**SOUTHLAND LIFE INS. CO. et al. v. BARRETT et al.**

**No. 14521.**

Court of Civil Appeals of Texas, Fort Worth.

June 11, 1943.

Rehearing Denied July 9, 1943.

Arthur Haddaway, of Fort Worth, for appellant Southland Life Ins. Co.

Clyde O. Eastus, U. S. Atty., of Ft. Worth, for appellant United States.

Fred S. Dudley, of Fort Worth, for appellee Mrs. Hazel Hunter Barrett.

McDONALD, Chief Justice.

On January 28, 1932, Hazel Hunter Barrett, then the wife of A. P. Barrett, owned, as her separate property, a residence located on Penn Street, in Fort Worth, Texas. It is agreed by all parties that the property at that time was not the homestead of the Barretts, and that they then resided in and owned a home elsewhere in the City of Fort Worth. On the date mentioned, Mrs. Barrett and her husband executed a note in the principal sum of $20,000, payable to the order of Trinity Bond Investment Corporation, due on or before three years after its date, and also executed a deed of trust securing the note. It is agreed that the note was subject to a credit of $10,000 before the happening of any of the events hereinafter described.

According to a finding of the jury, which will be discussed later, Mr. Barrett paid to Trinity Bond Investment Corporation the full balance of the note on October 28, 1935.

In May of 1932 the Barretts sold the home they were then occupying, and moved into the Penn Street residence. The Penn Street property was occupied by the Barretts as their home from then on, and was so occupied at the times hereinafter mentioned.

In November of 1935 Mrs. Barrett and her husband executed and delivered to Trinity Bond Investment Corporation an extension agreement in writing, which recites that the Barretts executed the note and deed of trust above mentioned, that there has been paid on the principal of the note the sum of $10,000, and all interest to November 15, 1935, leaving unpaid thereon the sum of $10,000, with interest from November 15, 1935, that Trinity Bond Investment Corporation is the legal holder and owner thereof, that the Barretts desire to renew said note and to extend the lien securing same on said property until all of said note, with interest, shall have been fully paid. The extension agreement further recites that in consideration of the renewal of said note and debt, and the extension of said lien, Mr. and Mrs. Barrett do thereby renew and extend the note to the extent of the unpaid balance thereon, to-wit, the sum of $10,000 with interest at the rate of six per cent per annum from November 15, 1935, and do thereby extend the lien on said property to the 28th day of January, 1937, and do thereby acknowledge the same as a valid and subsisting debt and lien on said property, and that the Barretts agree, promise and obligate themselves jointly and severally to pay the sum of $10,000 to the Trinity Bond Investment Corporation, or its order, on the 28th day of January, 1937, together with interest at the rate of six per cent per annum, the interest to be payable semi-annually as it accrues.

Mrs. Barrett acknowledged the instrument before a notary public of Queens County, New York, on November 13, 1935, and Mr. Barrett acknowledged it before a notary public of Dallas County, Texas, on November 19, 1935.

Trinity Bond Investment Corporation, by a written transfer dated November 15, 1935, assigned the note and lien to Southland Life Insurance Company, and on November 19, 1935, received from the Southland Life Insurance Company in payment therefor the sum of $10,000.

Thereafter the Barretts executed and delivered to Southland Life Insurance Company three written extensions of the note, dated, respectively, January 23, 1937, January 4, 1938, and January 28, 1939. None of the $10,000 of principal has been paid, and a considerable amount of interest was past due and unpaid at the time of the foreclosure hereinafter mentioned.

On February 3, 1942, Southland Life Insurance Company caused the property to be sold by a substitute trustee, under the deed of trust, and became the purchaser at the trustee's sale. All of the instruments above referred to were recorded, and no issue is made in that regard.

Prior to the filing of this suit, Mr. and Mrs. Barrett were divorced, but Mrs. Bar-

rett continued to occupy the property as her homestead.

On February 3, 1942, Mrs. Barrett, as a feme sole, brought this suit, naming Southland Life Insurance Company and Trinity Bond Investment Corporation as defendants, seeking to cancel the note and lien in question, and the sale of the property by the substitute trustee. Southland Life Insurance Company answered, and, among other pleadings, filed a cross-action against Mrs. Barrett seeking to recover title and possession of the property. Other pleadings filed in the cause will be noted in the course of this opinion.

As has been said, the jury, in answer to special issues, found that Mr. Barrett had paid the balance of the note to Trinity Bond Investment Corporation on October 28, 1935, which was before the time of the sale and transfer of the note to Southland Life Insurance Corporation. Special issue No. 2, and the answer of the jury thereto, is as follows:

"2. Do you find from a preponderance of the evidence that when the extension agreement dated November 9, 1935, was executed by Hazel Hunter Barrett she did not know that the $20,000.00 had been paid (if you have found it was paid)? Answer Yes or No. Answer: No."

In answer to the third issue the jury found that Trinity Bond Investment Corporation concealed from Mrs. Barrett the "facts as to such payment", and in answer to the fourth issue they found that Mr. Barrett concealed from Mrs. Barrett "the facts as to such payment". In answer to the fifth issue the jury found that prior to the time of the execution of the extension agreement Mrs. Barrett by the exercise of reasonable diligence could not have discovered the facts pertaining to such payment.

In answer to the seventh issue the jury found that Southland Life Insurance Company at the time of purchasing the note and mortgage relied on the written statements contained in the extension agreement acknowledging the validity of the note and lien.

Mrs. Barrett filed a motion for judgment, praying the court to disregard the answer to the seventh issue on the ground that it was immaterial. The court rendered judgment pursuant to such motion, declaring that the answer to the seventh issue was immaterial, cancelling the note and deed of

trust, and the deed of trust foreclosure sale, and decreeing in certain other respects as will later be noted.

Southland Life Insurance Company has appealed.

■■ To begin with, we shall notice the answer of the jury to the second issue, above set out. Mrs. Barrett, in her brief and in her argument here, has treated the answer of the jury to the second issue as a finding that she did not know that the note had been paid when she executed the extension agreement of November 9, 1935. The answer of the jury is plainly to the contrary. Eliminating the double negative, as ought to have been done from the first day one was ever tendered to any court, the second issue cast upon Mrs. Barrett the burden of proving that she was in ignorance of the fact that the note had been paid, and of obtaining an affirmative answer to such inquiry. Instead of obtaining the affirmative answer that was required to establish her ignorance of the payment, she obtained a negative answer. She did not object to the form of the issue, so far as the record before us shows, nor did she object to the answer of the jury, nor has she made any complaint here. She has simply misconstrued the answer. If it were an original proposition before us, we might feel tempted to say that a jury would be calculated to misconstrue such an inquiry, but the matter is foreclosed by such holdings as that in Gulf, C. & S. F. Ry. Co. v. Giun, 131 Tex. 548, 116 S.W.2d 693, 116 A.L.R. 795. We must follow such holdings, and declare that the answer to the second issue does not establish that Mrs. Barrett was ignorant of the fact of the payment of the note when she signed the extension agreement. The answers of the jury to the third, fourth and fifth issues might indicate that the jury misunderstood the second issue, and the effect of the answer made, but Mrs. Barrett has made no complaint either in the trial court or here concerning the matter.

In substance, Mrs. Barrett's theory as to the invalidity of the lien held by the Southland is this: That the note was paid in full before the execution of the extension agreement and the transfer to the Southland; that the payment of the note dissolved the lien against the property; that the execution of the extension agreement constituted an attempt to create a lien on the homestead in contravention of Art. 16, Section 50, of the Texas Constitution,

Vernon's Ann.St., which declares that "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife * * *." It is admitted that the lien was not originally given for purchase money, taxes, or improvements.

■ We agree that the payment of the note was enough of itself to dissolve the lien, and that, unless there be something in the case which precludes Mrs. Barrett from making such a defense, a valid lien could not be placed against the homestead simply by the device of purporting to extend and renew a lien which had already been dissolved by the payment of the obligation secured.

We have grave doubts whether the evidence is sufficient to support the finding of the jury that Mr. Barrett had paid the note in full. But in view of the conclusions which we have reached, we shall assume, without deciding, that the evidence is sufficient to support the finding of such payment.

■■ Southland first contends that it is protected in its lien as a holder in due course, by virtue of the provisions of the Negotiable Instruments Law, Vernon's Ann.Civ.St. art. 5932 et seq. In our opinion, the contention cannot be sustained for two reasons. First, nothing in the statute relating to negotiable instruments can be relied upon to overcome the provisions of the Constitution, above quoted. If the lien is invalid by reason of the constitutional prohibitions, the provisions of a statute cannot save it. Second, it appears to us that the provisions of the Negotiable Instruments Law relate to the note, and not to the lien securing it. Wood v. Sparks, Tex.Comm.App., 59 S.W.2d 361; Busby v. Jones, 134 Tex. 241, 133 S.W.2d 566.

■■ We sustain Southland's plea that Mrs. Barrett is estopped to claim that the note was paid, because of the recitals contained in the extension agreement of November 9, 1935. As has been said, the extension agreement recites that there is an unpaid balance of $10,000 owing on the note. It is admitted that the lien was valid when first executed, because the property was not then the homestead. It is

hard for us to think of a plainer case of estoppel than one where the makers of a note and lien declare in a formal extension agreement that a certain amount of an indebtedness secured by a valid lien is unpaid, and obligate themselves to pay to the payee or its order the amount so declared to be unpaid, and the note later comes into the hands of a purchaser who relies upon the declarations contained in the extension agreement. Under the facts, which are not disputed, a most pertinent inquiry needed to be made by the purchaser of the note was whether there was yet an unpaid balance on the note, and the amount of the balance. The makers of the note as well as the payee all declared that there was still owing the sum of $10,000 on the principal of the note. The makers of the note knew that it was payable to order, and that it might be assigned to an innocent purchaser. What higher source of information was there available to Southland Life Insurance Company than the declarations of the Barretts contained in the extension agreement? Who was there more concerned in the protection of the homestead than Mr. and Mrs. Barrett? As we have been compelled to hold, Mrs. Barrett failed to obtain a jury finding that she was ignorant of the fact of payment of the note. But we would make the same holding if the jury had found that she was ignorant of the fact of payment of the note. She should not have signed the extension agreement without ascertaining the facts. There is nothing in the record to show that Southland knew that the note had been paid, nor is there evidence of any fact or circumstance which would have placed upon it the duty of making any inquiry beyond the declarations of the Barretts, contained in the extension agreement, and the declaration of the payee of the note contained in its written transfer to Southland. In a case such as we have here the makers of the note are properly chargeable with knowledge of the amount of the unpaid balance, when they execute and acknowledge a formal written instrument, designed to be recorded in the deed records of the county, declaring that the note is unpaid, and promising and agreeing to pay the specified unpaid balance to the payee or its order.

As was said by this court in First Texas Joint Stock Land Bank v. Chapman, Tex. Civ.App., 48 S.W.2d 651, 655, writ of er-

ror dismissed: "Notwithstanding this emphatic language of the Constitution, it seems now to be the settled law of this state that the homestead of a family may be lost, not on the ground that a conveyance, mortgage, or lien covering the same is valid, but on the ground that the homesteader may estop himself or herself from claiming the benefits of the constitutional provisions." Also see Lincoln v. Bennett, 138 Tex. 56, 156 S.W.2d 504, and cases there cited.

The trial court should have rendered judgment in favor of Southland against Mrs. Barrett upon the verdict of the jury. This holding renders it unnecessary to pass upon other points of error asserted by Southland.

The only other issue necessary to be noted relates to the claim of the United States of America, based upon a claim against Mrs. Barrett for unpaid income taxes.

Southland, in its cross-action seeking title and possession of the property, made the United States a party. The latter answered, alleging that Mrs. Barrett was indebted to the United States in the sum of $5,933.29 for income taxes for the taxable period of 1936, and that same was secured by a lien upon the property in question by reason of the filing of a claim for such taxes in the Federal Tax Liens Records of Tarrant County on June 19, 1941. The trial court awarded the United States a judgment against Mrs. Barrett for the amount of the taxes, but denied the claim of a lien. The United States has appealed, contending that it acquired a lien despite the fact that the property was Mrs. Barrett's homestead.

The United States did not file an appeal bond. It was held in United States v. Branson, Tex.Civ.App., 147 S.W.2d 286, writ of error refused, that it was necessary for the United States to give an appeal bond, as must any other litigant, and the appeal was dismissed for lack of an appeal bond. In view of that holding, and of the act of our Supreme Court in refusing a writ of error, we followed that decision in Thomas v. Cowan, 153 S.W.2d 509. The appeal of the United States in the present case is, therefore, unavailing. But had the appeal been properly lodged here, we should have held that the United States now has no lien on the property in question. Southland Life Insurance Company is the owner of the property by reason of the deed of trust foreclosure. The lien of the United States, if any, was inferior to Southland's lien, and was eliminated by the foreclosure. Exchange Nat. Bank v. Davy, D.C., 13 F.Supp. 226; In re Wyley Co., D.C., 292 F. 900; In re Caswell Const. Co., D.C., 13 F.2d 667; Sherwood v. United States, D.C., 5 F.2d 991; Ferris v. Chic-Mint Gum Co., 14 Del.Ch. 232, 124 A. 577; United States v. City of Greenville, 4 Cir., 118 F.2d 963.

The judgment of the trial court, insofar as it decrees cancellation of the note and lien held by Southland, and the deed of trust foreclosure, and insofar as it denies Southland a judgment on its cross-action for title and possession of the property, is reversed, and judgment is here rendered denying plaintiff Mrs. Barrett any recovery, and awarding judgment to Southland as to title and possession of the property, both as against Mrs. Barrett and as against the United States. In all other respects the judgment of the trial court is left undisturbed.

## On Motion for Rehearing

Appellee, Mrs. Barrett, in her motion for rehearing, urges that the answers of the jury to the third, fourth and fifth special issues demonstrate that the answer actually made to the second issue was an unintended finding. Appellee further urges that there is no evidence to support the answer made to the second issue, as we have construed the answer of the jury, and that the trial court was therefore authorized to disregard the answer to the second issue. She also urges that we have arbitrarily exercised original jurisdiction in finding a fact contrary to the intended finding of the jury.

We are required to accept the findings of the jury as they appear in the verdict, and have no authority to substitute therefor in the verdict our notions of what the jury intended to find.

The trial court would not have been authorized to render judgment notwithstanding the answer to the second issue for the reason that no motion for judgment notwithstanding the verdict was filed, nor do we have authority to render judgment notwithstanding the answer to the second issue in the situation presented in the present case.

Appellee's attack upon the verdict, made for the first time in her motion for rehearing in this court, comes too late.

We have carefully examined the other contentions presented by appellee in her motion for rehearing, as well as those presented in the motion for rehearing filed by the United States of America, but adhere to the views which we expressed in our original opinion.

The motions for rehearing are overruled.