# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00233-CV

**Jimmy Lee Rains, Jr. and Jeanine Lynn Rains, Appellants**

**v.**

**Construction Financial Services, Inc., Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
### NO. 04-029-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants, Jimmy Lee Rains, Jr. and Jeanine Lynn Rains ("the Rainses"), appeal the district court's partial summary judgment in favor of appellee, Construction Financial Services, Inc. ("CFS"), finding that CFS's lien against the Rainses' homestead was valid and subject to foreclosure. In their sole issue on appeal, the Rainses assert that the district court erred in granting summary judgment because CFS's lien is invalidated by the Texas Constitution's general prohibition on the forced sale of homestead property for the payment of debts. *See* Tex. Const. art. XVI, § 50. CFS responds that its lien is valid because it is within the constitutional exception for the "refinance of a lien against a homestead." *See id*. § 50(a)(4). Alternatively, CFS argues that its lien is valid because it paid the Rainses' mortgage and is subrogated to the rights of the Rainses' original mortgagee. We conclude that CFS has a valid lien, which the constitution expressly authorizes, and affirm the district court's partial summary judgment.

## BACKGROUND

The record shows that on April 8, 2003, the Rainses entered into a three-party financing agreement with CFS and Blue Haven Pools to have a swimming pool built at their home in Georgetown. The parties contemplated two loan transactions: an "interim construction loan" and a long-term mortgage. First, CFS would provide an interim construction loan to the Rainses—a short-term loan for the duration of the pool's construction period. This would require CFS to pay the Rainses' existing mortgage against the home and loan them additional funds to pay for construction of the pool in exchange for a first lien on the homestead. Then, upon completion of the pool's construction, the Rainses would obtain a long-term mortgage to pay the interim construction loan.

Following this financing structure, CFS loaned the Rainses $166,846.05 to pay the $138,346.05 balance on their existing mortgage, the $26,000 cost to construct the pool, and transaction costs.[1] On April 8, 2003, the Rainses executed a promissory note to CFS for $166,846.05 secured by a deed of trust on their homestead. The Rainses also executed a $26,000 mechanic's lien note that Blue Haven Pools assigned to CFS. CFS paid the Rainses' existing mortgage, and the pool was built. But the Rainses were unable to obtain the long-term mortgage necessary to pay off the interim construction loan.[2]

---

[1] Transaction costs included loan origination fees, closing costs, and other costs associated with the loan.

[2] The Rainses contend that another entity, not a party to this appeal, promised to refinance the note payable to Construction Financial Services, Inc., at a lower interest rate, upon the note's maturity. After that entity did not refinance the note, the Rainses stopped making payments to CFS.

After the Rainses defaulted on the note, they filed suit against CFS for negligence, gross negligence, fraud, declaratory judgment that the liens were void, and a permanent injunction against foreclosure sale of their homestead. CFS counterclaimed, seeking foreclosure of its lien against the real property for nonpayment. The negligence and fraud claims were tried to a jury.[3] The jury found against the Rainses on their fraud claim and found both the Rainses and CFS negligent but apportioned fault eighty percent to the Rainses and five percent to CFS.[4] The district court subsequently granted partial summary judgment in favor of CFS concerning the validity of the lien it held against the Rainses' real property and ordered foreclosure sale of the property.

On appeal, the Rainses contend that the district court erred in granting the partial summary judgment in favor of CFS because CFS's lien is invalid under the homestead protections in the Texas Constitution. *See id*. § 50. CFS argues that its lien is a refinance of a lien against a homestead, and therefore, is valid. *See id*. § 50(a)(4). Alternatively, CFS argues that it is subrogated to the rights of the original mortgagee.

**DISCUSSION**

**Standard of review**

The district court's ruling on a summary judgment is a question of law that we review *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every

---

[3] The Rainses do not appeal the judgment on the jury verdict.

[4] The jury also found that another defendant, not a party to this appeal, was fifteen percent negligent.

3

reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 661. The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). Because the order granting partial summary judgment does not specify the grounds on which it is based, we must affirm the judgment if any of the theories presented to the district court and preserved for appellate review are meritorious. *Id.* at 216.

**The parties' contentions**

The Rainses argue that the district court erred in granting partial summary judgment because CFS's lien is invalidated by the Texas Constitution's general prohibition on the forced sale of homestead property for the payment of debts. *See* Tex. Const. art. XVI, § 50(a). The homestead interest is a legal interest created by the constitution that protects property from all but the few types of constitutionally permitted liens that may be imposed against a homestead. *See Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992); *see also* Tex. Const. art. XVI, § 50. Homesteads are protected from forced sale for the payment of debts, except for those debts specifically enumerated in the constitution. Tex. Const. art. XVI, § 50(a); *see also* Tex. Prop. Code Ann. § 41.001(b) (West Supp. 2005).

The Rainses contend that if the loan was a refinance, it could only be a refinance in the amount of $138,346.05—the original debt that CFS paid to the Rainses' mortgagee—not the entire amount of their $166,846.05 debt to CFS. The Rainses further contend that there is not any mechanic's and materialman's lien against the homestead for the $26,000 pool construction expense because the lien is not self-executing and CFS did not comply with the property code to perfect its

4

statutory lien. *See* Tex. Prop. Code Ann. § 53.254 (West Supp. 2005). The Rainses also assert that when CFS paid their mortgage, without obtaining an assignment or transfer of the debt from their mortgagee, the original deed of trust lien was extinguished. *See*, *e.g.*, Tex. Bus. & Com. Code Ann. § 3.602 (West Supp. 2005); *Lawyers Surety Corp. v. Riverbend Bank*, 966 S.W.2d 182, 186 (Tex. App.—Fort Worth 1998, no pet.); *Texas Bank & Trust Co. v. Custom Leasing, Inc.*, 402 S.W.2d 926, 930 (Tex. Civ. App.—Amarillo 1966, no writ); *Spencer-Sauer Lumber Co. v. Ballard*, 98 S.W.2d 1054, 1055 (Tex. Civ. App.—San Antonio 1936, no writ).

CFS responds that it has a valid lien against the Rainses' homestead pursuant to the constitutional exception for "the refinance of a lien against a homestead." *See* Tex. Const. art. XVI, § 50(a)(4). It further argues that, because it paid the Rainses' existing mortgage at their request, it became subrogated to the original mortgagee's rights and the lack of assignment is immaterial. *See, e.g.*, *Med Ctr. Bank v. M.D. Fleetwood*, 854 S.W.2d 278, 287 (Tex. App.—Austin 1993, writ denied); *Leonard v. Brazosport Bank of Tex.*, 628 S.W.2d 216, 220 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Means v. United Fid. Life Ins. Co.*, 550 S.W.2d 302, 309 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.). In its motion for partial summary judgment, CFS argued specifically that "[o]n April 8, 2003, Plaintiffs [the Rainses] borrowed $166,846.05 from CFS, the bulk of which was used to pay off the existing mortgage. This is a refinancing."

**Refinancing under Article XVI, Section 50(a)(4)**

The Texas Constitution provides, in relevant part, that "[t]he homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for . . . the refinance of a lien against a homestead . . . ." Tex. Const. art. XVI,

5

§ 50(a)(4). It is undisputed that the Rainses had a pre-existing mortgage on their homestead and that CFS paid that mortgage and advanced additional funds for the construction of the pool in exchange for a promissory note in the amount of $166,846.05, secured by a deed of trust on the Rainses' homestead.

Neither the constitution nor the finance code define "refinance." In construing a constitutional provision, we may consider factors such as

> the language of the constitutional provision itself, its purpose, the historical context in which it was written, the intention of the framers and ratifiers, the application in prior judicial decisions, the relation of the provision to other parts of the Constitution and the law as a whole, the understanding of other branches of government, the law in other jurisdictions, state and federal, constitutional and legal theory, and fundamental values including justice and social policy.

*Tesco Am., Inc. v. Strong Indus.*, No. 04-0269, 2006 Tex. LEXIS 208, at *9 n.15 (Tex. March 17, 2006) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 677 n.6 (Tex. 1996)). Two years before Texas voters approved the 1995 constitutional amendment authorizing the "refinance of a lien against a homestead," the supreme court noted that "an ordinary refinance transaction" is one in which an indebtedness is being "renewed, modified, and extended." *First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 413 n.3 (Tex. 1993); *see also* Tex. S.J. Res. 46, 74th Leg., R.S., 1995 Tex. Gen. Laws 6431; 7 Tex. Admin. Code § 1.102(25) (2006) (defining " refinance" as "[a] new loan contract that includes, in whole or in part, the net balance of one or more existing loan contracts"); 12 C.F.R. § 226.20(a), .1(a), (b) ("Regulation Z") (2006) ("[a] refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same

6

consumer."). We may consider how "refinance" has been applied in prior judicial decisions and the law as a whole. *See Tesco Am., Inc.*, 2006 Tex. LEXIS 208, at \*9 n.15.

Parties may renew and extend a lien against a homestead that was created by an earlier deed of trust. *McGeorge v. Van Meter*, 358 S.W.2d 580, 583-84 (Tex. 1962). But the parties cannot create a lien against a homestead by purporting to renew and extend a prior lien that has been dissolved by payment. *Chase Manhattan Mortgage Corp. v. Cook*, 141 S.W.3d 709, 714 (Tex. App.—Eastland 2004, no pet.); *Southland Life Ins. Co. v. Barrett*, 172 S.W.2d 997, 1000 (Tex. Civ. App.—Fort Worth 1943, writ ref'd w.o.m.).

Here, an addendum to the deed of trust clarifies that the Rainses were "refinancing," because they were renewing, modifying, and extending their existing indebtedness with funds secured from a new debt:

> This Deed of Trust is given pursuant to the Agreement and is given in renewal, extension and rearrangement, but not in extinguishment, of the following lien:
>
> The unpaid balance owed on that certain Note dated May 8, 2000, in the amount of $141,907.00, executed by JIMMY LEE RAINS, JR. and JEANINE LYNN RAINS, payable to the order of KAU[F]MAN AND BROAD MORTGAGE COMPANY, as therein provided, secured by a Deed of Trust of even date therewith, recorded in Document #2000031114 of the Official Public Records of Williamson County, Texas; and
>
> The unpaid balance on that certain Note of even date herewith, in the amount of $26,000, executed by JIMMY LEE RAINS, JR. and JEANINE LYNN RAINS, payable to the order of BLUE HAVEN POOLS, as therein provided, secured by a Mechanic's Lien Contract of even date therewith, being recorded simultaneously with this instrument in the Official Public Records of Williamson County, Texas.
>
> Grantors expressly acknowledge that the above described lien(s) is a valid and subsisting lien against the property herein described, and it is expressly agreed that

> said lien is hereby renewed, extended and carried forward in full force and effect to secure the payment of the Note hereby secured.

The parties created a lien against the Rainses' homestead by renewing and extending a prior lien that had not been paid, thus the transaction was a "refinance" within the scope of the constitutional exception to homestead protection in section 50(a)(4). *See* Tex. Const. art. XVI, § 50(a)(4).

The Rainses contend that this renewal, extension and rearrangement of their debt could not have been a refinance for any amount in excess of $138,346.05—the original debt that CFS paid to the Rainses' mortgagee—because the $166,846.05 debt included closing costs and $26,000 advanced for the construction of the pool. However, section 50 provides that a refinance may both renew and extend a prior debt secured by a homestead and advance additional funds for constructing new improvements to the homestead. *Id*. § 50(e)(2); *see id.* (a)(5). Section 50(e)(2) of the constitution provides that a valid lien may be created against the homestead for the entire amount of the indebtedness:

> [a] refinance of debt secured by a homestead and described by any subsection under Subsections (a)(1)-(a)(5) that includes the advance of additional funds may not be secured by a valid lien against the homestead unless: . . . the advance of all the additional funds is for reasonable costs necessary to refinance such debt or for a purpose described by Subsection (a)(2), (a)(3), or (a)(5) of this section.

*Id*. § 50(e)(2). The applicable "purpose" for the advance additional funds is in subsection (a)(5), which allows the forced sale of a homestead to pay for "work and material used in constructing new improvements thereon, if [as here,] contracted for in writing." *Id*. § 50(a)(5). These constitutional provisions expressly authorize the type of transaction that the Rainses conducted with CFS.

8

Accordingly, we overrule the Rainses' issue regarding the validity of CFS's lien and affirm the district court's partial summary judgment on this basis. Because we have, we need not address the parties' additional arguments.

## CONCLUSION

Having concluded that CFS has a valid lien, which the constitution expressly authorizes, we affirm the district court's partial summary judgment.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   August 25, 2006