TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00233-CV






Jimmy Lee Rains, Jr. and Jeanine Lynn Rains, Appellants


v.


Construction Financial Services, Inc., Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT

NO. 04-029-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Appellants, Jimmy Lee Rains, Jr. and Jeanine Lynn Rains ("the Rainses"), appeal the
district court's partial summary judgment in favor of appellee, Construction Financial Services, Inc.
("CFS"), finding that CFS's lien against the Rainses' homestead was valid and subject to
foreclosure. In their sole issue on appeal, the Rainses assert that the district court erred in granting
summary judgment because CFS's lien is invalidated by the Texas Constitution's general prohibition
on the forced sale of homestead property for the payment of debts. See Tex. Const. art. XVI, § 50. 
CFS responds that its lien is valid because it is within the constitutional exception for the "refinance
of a lien against a homestead." See id. § 50(a)(4). Alternatively, CFS argues that its lien is valid
because it paid the Rainses' mortgage and is subrogated to the rights of the Rainses' original
mortgagee. We conclude that CFS has a valid lien, which the constitution expressly authorizes, and
affirm the district court's partial summary judgment.

BACKGROUND

 The record shows that on April 8, 2003, the Rainses entered into a three-party
financing agreement with CFS and Blue Haven Pools to have a swimming pool built at their home
in Georgetown. The parties contemplated two loan transactions: an "interim construction loan" and
a long-term mortgage. First, CFS would provide an interim construction loan to the Rainses--a
short-term loan for the duration of the pool's construction period. This would require CFS to pay
the Rainses' existing mortgage against the home and loan them additional funds to pay for
construction of the pool in exchange for a first lien on the homestead. Then, upon completion of the
pool's construction, the Rainses would obtain a long-term mortgage to pay the interim construction
loan.

 Following this financing structure, CFS loaned the Rainses $166,846.05 to pay the
$138,346.05 balance on their existing mortgage, the $26,000 cost to construct the pool, and
transaction costs. (1) On April 8, 2003, the Rainses executed a promissory note to CFS for $166,846.05
secured by a deed of trust on their homestead. The Rainses also executed a $26,000 mechanic's lien
note that Blue Haven Pools assigned to CFS. CFS paid the Rainses' existing mortgage, and the pool
was built. But the Rainses were unable to obtain the long-term mortgage necessary to pay off the
interim construction loan. (2)

 After the Rainses defaulted on the note, they filed suit against CFS for negligence,
gross negligence, fraud, declaratory judgment that the liens were void, and a permanent injunction
against foreclosure sale of their homestead. CFS counterclaimed, seeking foreclosure of its lien
against the real property for nonpayment. The negligence and fraud claims were tried to a jury. (3) The
jury found against the Rainses on their fraud claim and found both the Rainses and CFS negligent
but apportioned fault eighty percent to the Rainses and five percent to CFS. (4) The district court
subsequently granted partial summary judgment in favor of CFS concerning the validity of the lien
it held against the Rainses' real property and ordered foreclosure sale of the property.

 On appeal, the Rainses contend that the district court erred in granting the partial
summary judgment in favor of CFS because CFS's lien is invalid under the homestead protections
in the Texas Constitution. See id. § 50. CFS argues that its lien is a refinance of a lien against a
homestead, and therefore, is valid. See id. § 50(a)(4). Alternatively, CFS argues that it is subrogated
to the rights of the original mortgagee.


DISCUSSION


Standard of review

 The district court's ruling on a summary judgment is a question of law that we review
de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a
summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant's favor. Id. at 661. The party moving
for summary judgment bears the burden of showing that no genuine issue of material fact exists and
that it is entitled to judgment as a matter of law. Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 215-16 (Tex. 2003). Because the order granting partial summary judgment does not
specify the grounds on which it is based, we must affirm the judgment if any of the theories
presented to the district court and preserved for appellate review are meritorious. Id. at 216. 


The parties' contentions 

 The Rainses argue that the district court erred in granting partial summary judgment
because CFS's lien is invalidated by the Texas Constitution's general prohibition on the forced sale
of homestead property for the payment of debts. See Tex. Const. art. XVI, § 50(a). The homestead
interest is a legal interest created by the constitution that protects property from all but the few types
of constitutionally permitted liens that may be imposed against a homestead. See Heggen v.
Pemelton, 836 S.W.2d 145, 148 (Tex. 1992); see also Tex. Const. art. XVI, § 50. Homesteads are
protected from forced sale for the payment of debts, except for those debts specifically enumerated
in the constitution. Tex. Const. art. XVI, § 50(a); see also Tex. Prop. Code Ann. § 41.001(b) (West
Supp. 2005).

 The Rainses contend that if the loan was a refinance, it could only be a refinance in
the amount of $138,346.05--the original debt that CFS paid to the Rainses' mortgagee--not the
entire amount of their $166,846.05 debt to CFS. The Rainses further contend that there is not any
mechanic's and materialman's lien against the homestead for the $26,000 pool construction expense
because the lien is not self-executing and CFS did not comply with the property code to perfect its
statutory lien. See Tex. Prop. Code Ann. § 53.254 (West Supp. 2005). The Rainses also assert that
when CFS paid their mortgage, without obtaining an assignment or transfer of the debt from their
mortgagee, the original deed of trust lien was extinguished. See, e.g., Tex. Bus. & Com. Code Ann.
§ 3.602 (West Supp. 2005); Lawyers Surety Corp. v. Riverbend Bank, 966 S.W.2d 182, 186 (Tex.
App.--Fort Worth 1998, no pet.); Texas Bank & Trust Co. v. Custom Leasing, Inc., 402 S.W.2d 926,
930 (Tex. Civ. App.--Amarillo 1966, no writ); Spencer-Sauer Lumber Co. v. Ballard, 98 S.W.2d
1054, 1055 (Tex. Civ. App.--San Antonio 1936, no writ).

 CFS responds that it has a valid lien against the Rainses' homestead pursuant to the
constitutional exception for "the refinance of a lien against a homestead." See Tex. Const. art. XVI,
§ 50(a)(4). It further argues that, because it paid the Rainses' existing mortgage at their request, it
became subrogated to the original mortgagee's rights and the lack of assignment is immaterial. See,
e.g., Med Ctr. Bank v. M.D. Fleetwood, 854 S.W.2d 278, 287 (Tex. App.--Austin 1993, writ
denied); Leonard v. Brazosport Bank of Tex., 628 S.W.2d 216, 220 (Tex. App.--Houston [14th
Dist.] 1982, writ ref'd n.r.e.); Means v. United Fid. Life Ins. Co., 550 S.W.2d 302, 309 (Tex. Civ.
App.--El Paso 1977, writ ref'd n.r.e.). In its motion for partial summary judgment, CFS argued
specifically that "[o]n April 8, 2003, Plaintiffs [the Rainses] borrowed $166,846.05 from CFS, the
bulk of which was used to pay off the existing mortgage. This is a refinancing."


Refinancing under Article XVI, Section 50(a)(4) 

 The Texas Constitution provides, in relevant part, that "[t]he homestead of a family,
or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all
debts except for . . . the refinance of a lien against a homestead . . . ." Tex. Const. art. XVI,
§ 50(a)(4). It is undisputed that the Rainses had a pre-existing mortgage on their homestead and that
CFS paid that mortgage and advanced additional funds for the construction of the pool in exchange
for a promissory note in the amount of $166,846.05, secured by a deed of trust on the Rainses'
homestead. 

 Neither the constitution nor the finance code define "refinance." In construing a
constitutional provision, we may consider factors such as


the language of the constitutional provision itself, its purpose, the historical context
in which it was written, the intention of the framers and ratifiers, the application in
prior judicial decisions, the relation of the provision to other parts of the Constitution
and the law as a whole, the understanding of other branches of government, the law
in other jurisdictions, state and federal, constitutional and legal theory, and
fundamental values including justice and social policy.



Tesco Am., Inc. v. Strong Indus., No. 04-0269, 2006 Tex. LEXIS 208, at *9 n.15 (Tex. March 17,
2006) (citing Tilton v. Marshall, 925 S.W.2d 672, 677 n.6 (Tex. 1996)). Two years before Texas
voters approved the 1995 constitutional amendment authorizing the "refinance of a lien against a
homestead," the supreme court noted that "an ordinary refinance transaction" is one in which an
indebtedness is being "renewed, modified, and extended." First Nat'l Bank of Kerrville v. O'Dell,
856 S.W.2d 410, 413 n.3 (Tex. 1993); see also Tex. S.J. Res. 46, 74th Leg., R.S., 1995 Tex. Gen.
Laws 6431; 7 Tex. Admin. Code § 1.102(25) (2006) (defining " refinance" as "[a] new loan contract
that includes, in whole or in part, the net balance of one or more existing loan contracts"); 12 C.F.R.
§ 226.20(a), .1(a), (b) ("Regulation Z") (2006) ("[a] refinancing occurs when an existing obligation
that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same
consumer."). We may consider how "refinance" has been applied in prior judicial decisions and the
law as a whole. See Tesco Am., Inc., 2006 Tex. LEXIS 208, at *9 n.15.

 Parties may renew and extend a lien against a homestead that was created by an
earlier deed of trust. McGeorge v. Van Meter, 358 S.W.2d 580, 583-84 (Tex. 1962). But the parties
cannot create a lien against a homestead by purporting to renew and extend a prior lien that has been
dissolved by payment. Chase Manhattan Mortgage Corp. v. Cook, 141 S.W.3d 709, 714 (Tex.
App.--Eastland 2004, no pet.); Southland Life Ins. Co. v. Barrett, 172 S.W.2d 997, 1000 (Tex. Civ.
App.--Fort Worth 1943, writ ref'd w.o.m.).

 Here, an addendum to the deed of trust clarifies that the Rainses were "refinancing,"
because they were renewing, modifying, and extending their existing indebtedness with funds
secured from a new debt:


This Deed of Trust is given pursuant to the Agreement and is given in renewal,
extension and rearrangement, but not in extinguishment, of the following lien:


The unpaid balance owed on that certain Note dated May 8, 2000, in the amount of
$141,907.00, executed by JIMMY LEE RAINS, JR. and JEANINE LYNN RAINS,
payable to the order of KAU[F]MAN AND BROAD MORTGAGE COMPANY, as
therein provided, secured by a Deed of Trust of even date therewith, recorded in
Document #2000031114 of the Official Public Records of Williamson County,
Texas; and


The unpaid balance on that certain Note of even date herewith, in the amount of
$26,000, executed by JIMMY LEE RAINS, JR. and JEANINE LYNN RAINS,
payable to the order of BLUE HAVEN POOLS, as therein provided, secured by a
Mechanic's Lien Contract of even date therewith, being recorded simultaneously
with this instrument in the Official Public Records of Williamson County, Texas.


Grantors expressly acknowledge that the above described lien(s) is a valid and
subsisting lien against the property herein described, and it is expressly agreed that 
said lien is hereby renewed, extended and carried forward in full force and effect to
secure the payment of the Note hereby secured.



The parties created a lien against the Rainses' homestead by renewing and extending a prior lien that
had not been paid, thus the transaction was a "refinance" within the scope of the constitutional
exception to homestead protection in section 50(a)(4). See Tex. Const. art. XVI, § 50(a)(4). 

 The Rainses contend that this renewal, extension and rearrangement of their debt
could not have been a refinance for any amount in excess of $138,346.05--the original debt that CFS
paid to the Rainses' mortgagee--because the $166,846.05 debt included closing costs and $26,000
advanced for the construction of the pool. However, section 50 provides that a refinance may both
renew and extend a prior debt secured by a homestead and advance additional funds for constructing
new improvements to the homestead. Id. § 50(e)(2); see id. (a)(5). Section 50(e)(2) of the
constitution provides that a valid lien may be created against the homestead for the entire amount
of the indebtedness:


[a] refinance of debt secured by a homestead and described by any subsection under
Subsections (a)(1)-(a)(5) that includes the advance of additional funds may not be
secured by a valid lien against the homestead unless: . . . the advance of all the
additional funds is for reasonable costs necessary to refinance such debt or for a
purpose described by Subsection (a)(2), (a)(3), or (a)(5) of this section.



Id. § 50(e)(2). The applicable "purpose" for the advance additional funds is in subsection (a)(5),
which allows the forced sale of a homestead to pay for "work and material used in constructing new
improvements thereon, if [as here,] contracted for in writing." Id. § 50(a)(5). These constitutional
provisions expressly authorize the type of transaction that the Rainses conducted with CFS. 
Accordingly, we overrule the Rainses' issue regarding the validity of CFS's lien and affirm the
district court's partial summary judgment on this basis. Because we have, we need not address the
parties' additional arguments.


CONCLUSION


 Having concluded that CFS has a valid lien, which the constitution expressly
authorizes, we affirm the district court's partial summary judgment.



 __________________________________________

 Bob Pemberton, Justice


Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: August 25, 2006

1. Transaction costs included loan origination fees, closing costs, and other costs associated
with the loan.
2. The Rainses contend that another entity, not a party to this appeal, promised to refinance
the note payable to Construction Financial Services, Inc., at a lower interest rate, upon the note's
maturity. After that entity did not refinance the note, the Rainses stopped making payments to CFS.
3. The Rainses do not appeal the judgment on the jury verdict.
4. The jury also found that another defendant, not a party to this appeal, was fifteen percent
negligent.