GULF, COLORADO & SANTA FE RAILWAY COMPANY V. MARIA
GIUN ET AL.

No. 7046.   Decided May 11, 1938.
Rehearing overruled June 8, 1938.
(116 S. W., 2d Series, 693.)

*Harris, Harris & Sedberry,* of San Angelo, *Wren, Pearson & Jeffrey,* of Fort Worth, for plaintiff in error.

On proposition that the charge of the court was not error. Three States Tel. Co. v. Kirkwood, 61 S. W. (2d) 568; Brunswig v. White, 70 Texas 504, 8 S. W. 85; Federal Surety Co. v. Smith, (Com. App.) 41 S. W. (2d) 210.

*Kerr & Gayer,* of San Angelo, for defendant in error.

*Charles J. Lieck,* of San Antonio, filed a brief as amicus curiae.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The nature and result of the suit is fairly and succinctly stated in the application for writ of error and is substantially followed in the statement here made. Maria Giun individually and as next friend of her two minor sons sued the Gulf, Colorado & Santa Fe Railway Company, complaining of the death of her husband and alleging that his death was caused by being run over by one of defendant's trains about nine years prior to the filing of the suit. It was admitted by supplemental petition that the cause of action alleged on behalf of Maria Giun individually was barred by the statute of limitation. It is alleged that deceased while attempting to cross the railroad track caught his foot on a spike which held him in the path of the train and that while being so held he signaled or waved to the approaching train when it was some 1200 feet distant; that the signal thus given was seen by the operatives of the train in time for them by the use of ordinary care to have stopped the train before it ran over deceased. It was further alleged that defendant was negligent with respect to the speed at which it was operating its train. The defendant railway company admitted in its answer that the train ran over and killed deceased, but alleged affirmatively that the operatives of the train discovered his presence in a place of safety by the side of the track while the train was a considerable distance away; that deceased remained in such safe position until the train was approaching 100 feet from him, he being then aware of the approach of the train, when he removed himself from the safe position he was occupying to a position of imminent peril across one of the rails in

front of the train; that when deceased's peril first came into existence the operatives of the train made immediate use of every means at their command to avoid killing or injuring deceased, but the distance was so short that it was impossible to stop the train, and that deceased did not heed the warning of the bell and whistle then being sounded. Defendant expressly denied negligence on its part and alleged that deceased's death was caused solely by his own negligence in going upon the track as a trespasser when an open and publicly used path was available underneath its bridge near by and in failing to change his position and in failing to heed defendant's warning. It alleged in the alternative that each of such acts on the part of deceased was the proximate cause of his death. Defendant further alleged upon information and belief that deceased intentionally took his own life.

Five issues were submitted to the jury. In response to two of these it was found that defendant did not discover deceased's peril in time to have avoided injuring him, and that his death was the result of an unavoidable accident. The issues were so conditioned by the instructions in the charge that in view of the findings stated it was not necessary for the jury to answer the remaining issues in order for the verdict to be complete. Upon the findings stated the Court rendered judgment for defendant. The Court of Civil Appeals reversed and remanded the case. 89 S. W. (2d) 465. It rested its action upon the view that the trial court committed error in the manner and form in which it submitted the issue of unavoidable accident, and also in·refusing to permit plaintiff, Maria Giun, to testify in her own behalf what the engineer's statements were that she would have testified he made to her at the scene of the accident through an interpreter had she been permitted to do so.

The issue submitting the question of unavoidable accident, and the answer thereto, read:

"Do you find from a preponderance of the evidence that the deceased's death was not the result of the (an) unavoidable accident, as that term is defined in defendant's Requested Charge Number 17? Answer 'Yes' or 'No.' Answer: 'No.' "

Neither the definition nor the form of the question was objected to by plaintiffs. The gist of the only objection made relating to the issue was that it was calculated to confuse the jury in that the question in the form propounded contains a double negative and requires a single affirmative word to indicate a negative answer and a negative word to indicate an affirmative

answer. The Court of Civil Appeals held that the issue as submitted "was undoubtedly confusing to the average jury."

**1, 2** We cannot condemn as erroneous the form of submission used. There is no more confusion incident to answering the question in the manner directed in the charge than is incident to refuting any fact inquired about in double negative form. Sometimes a party litigant has, as did plaintiffs in this case, the burden of establishing a negative fact. See in this connection Rosenthal Dry Goods Co. v. Hillebrandt, (Com. App.) 7 S. W. (2d) 521. The question requires careful consideration but is not one that requires expert knowledge of any kind, or more than average intelligence, in order to express by "yes" or "no" the jury's intended finding. It is possible for the reverse of the intended answer to be given if there is a lack of due consideration of the issue on the part of the jury. We cannot assume the jury did not perform its duty. Nothing is pointed out in the record before us indicating a lack of intelligence, or of due consideration of the issue, or that the answer in question expresses an unintended finding. The findings upon the issues of unavoidable accident and discovered peril would have been inconsistent if the answer to the issue under consideration had been "yes," if the jury in making such answer had meant thereby that defendant was negligent; but the findings are wholly consistent. The trial court did not err in submitting the issue in the manner pointed out. It is not necessary, of course, that the jury be instructed to answer the question by a single affirmative or a single negative, and is suggested that it is conducive to certainty that the answer will be expressed in accordance with the actual finding made, to instruct the jury that *in the event its finding is in the affirmative* the form of the answer should be, "It was not an unavoidable accident"; and that *"otherwise, the* answer should be 'No.' " Such an instruction not only tends to certainty that the finding will be correctly expressed, but tends as well to make certain that the jury understands that an affirmative finding, if made, must be made from a preponderance of the evidence. The suggested instruction is an improvement over that made in Southern Ice & Utilities Co. v. Richardson, 128 Texas 82, 95 S. W. (2d) 956, in that it is not subject to the construction that it in effect withdraws the instruction as to burden of proof which is correctly placed on plaintiff by the form of the question.

**3** The second question is whether the trial court erred in refusing to permit deceased's wife, Maria Giun, to state in her testimony her version of what the engineer said in conversation

with her through an interpreter at the scene of the accident shortly after it occurred. The excluded statement was such that it might have been decisive of the case if admitted.

The material facts bearing upon the question are that when Mrs. Giun was asked to state what the conversation was she was asked, "Who got the interpreter?" and replied that the interpreter went with her to the scene of the accident. She was then asked, "Who got the interpreter to talk?" and replied, "I asked the interpreter to talk." She stated his name was Melisio Ortiz, and that she did not then know where he was. According to the recitations in the bill of exceptions, Maria, had she been permitted, would have testified that the conversation as interpreted to her by Melisio was that the engineer "was sorry that it had happened; that when he whistled for the station he saw the man down on the track, saw him wave, and put on the brakes, but there was not room enough there to stop the train." It is stated in the opinion of the Court of Civil Appeals that "It is fair to assume that Maria Giun could not understand English and that the engineer could not understand Mexican." The authorities cited by that Court in support of its holding that the evidence was erroneously excluded are those applicable when the parties agree upon an interpreter as the medium of their communication. Such is not the case here. The respective relations of the parties to Melisio were obviously different. It does not appear that the engineer even knew his statements were being interpreted into Mexican. Plaintiffs stated in their brief that the evidence offered might have been subject to a proper objection, but that the objection urged on the ground that the statement of the engineer was ex parte was not good, and further, that in fact the statement was not ex parte. We need not determine whether the statement is ex parte or whether the objection urged was good. It appears from the record that Melisio accompanied Maria to the scene of the accident and was asked by her, and by her alone, to talk for her as interpreter. There is no evidence that the engineer agreed to accept the services of an interpreter or took recognition of Melisio in any way. If Maria was not qualified in the state of the record to testify of her own knowledge what the engineer said, her proffered statement of what Melisio said he said, was not competent and was correctly excluded, regardless of the correctness of the objection urged to its admission. Such testimony would have been nothing more than Maria's statement of what *Melisio* said. 17 Tex. Jur., Secs. 210-211-212; Cervantes v. State, 52 Texas Crim. Rep. 82, 105 S. W. 499; Turner v. State, 89 Texas Crim. Rep. 615, 232 S. W. 801; Boyd v. State, 78 Texas Crim. Rep. 28,

180 S. W. 230; Sharp v. McIntire, 23 Colo. 99, 46 Pac. 115; Wigmore on Evidence, Vol. 1, Sec. 812. In subsection (3) of the section of the text cited Professor WIGMORE says:

"A person conversing with a third person through an interpreter is not qualified to testify to the other person's statements, because he knows them only through the hearsay of the interpreter. Ordinarily, therefore, the third person's words cannot be proved by any one except the interpreter himself."

In the Boyd case supra the officers who were permitted to testify could not speak the Mexican language. Mrs. Gonzales, the interpreter, who spoke both Mexican and English, interpreted into English what the Mexican said in his own language. Mrs. Gonzales testified upon the trial, giving the circumstances and conditions under which the statement was taken, *but did not state in her testimony what the wounded Mexican said.* The officers were permitted to testify what was said in the declaration as interpreted to them by Mrs. Gonzales. The Court of Criminal Appeals held that Mrs. Gonzales herself could have given the testimony concerning the declaration but that it was error to permit the officers to do so, saying:

"These officers were permitted to testify, and the state used their evidence as original testimony. Various objections were urged, which we think should have been sustained. Her interpretation of these statements of the deceased to the American officers was not admissible, nor was there testimony as to what she said admissible. It would be purely hearsay. They knew nothing that occurred, except the conversation in the Spanish language, which Mrs. Gonzales interpreted to them. This was hearsay."

Regardless of the ground on which the trial court predicated its ruling in excluding the testimony it was correctly excluded, and the Court of Civil Appeals erred in predicating error upon its exclusion.

Inasmuch as the case was reversed and remanded on the assignments relating to unavoidable accident and discovered peril the Court of Civil Appeals did not find it necessary to determine whether the assignment alleging improper argument by one of defendant's counsel presented reversible error. This opinion will not be extended by restating what was said by counsel. See opinion of the Court of Civil Appeals. We are in accord with the view of that Court that the remarks were not proper, especially when considered in connection with the setting in which they were made, but reversible error is not shown.

We have examined the entire record of the matter, including the brief testimony of one of plaintiffs' witnesses, an officer and ex-ranger, the only witness whose testimony related to Mrs. Brooks' reputation for veracity. Mrs. Brooks was an important witness for defendant. The questionable feature of counsel's remarks was that by means of his own personal statement not grounded upon evidence he expressed surprise at the evidence given by the officer, to the effect that her reputation was bad, and further stated he (counsel) did not know that it was bad when he introduced her testimony, and did not know it had been questioned until he heard the officer testify. As preliminary to so stating to the jury he called one of the jurors by name several times. The statement was not such as to discredit the officer's testimony. Furthermore, as pointed out by the Court of Civil Appeals, plaintiffs' counsel did not object to the statement when made, but in their closing argument commented upon it at length in reply. The trial court did not err in not granting a new trial on this assignment.

For errors pointed out the judgment of the Court of Civil Appeals is reversed. The assignments discussed are all that are presented by the record. They disclose no error on the part of the trial court. Its judgment is therefore affirmed.

Opinion adopted by the Supreme Court May 11, 1938.

Rehearing overruled June 8, 1938.