## JACKSON v. EDMONDSON.

### No. 8798.

Court of Civil Appeals of Texas. Austin.

May 24, 1939.

Rehearing Denied June 14, 1939.

Kerr & Gayer, of San Angelo, for appellant.

W. A. Johnson, Robert P. Brown, and Cliff Tupper, Jr., all of San Angelo, for appellee.

BLAIR, Justice.

Appellee, Eli Edmondson, sued appellant Pat Jackson, for damages for injuries received when appellant drove his automobile into the rear end of the automobile of one Brown, which was parked off the paved portion of a highway immediately behind the automobile of one Manos, similarly parked and in which appellee was sitting;

it being alleged that appellant negligently drove his car at a high and unlawful rate of speed into the rear end of the Brown car, knocking it into the rear end of the Manos car, or that the Brown car was knocked out of the path of appellant's car, and that it then struck the Manos car in which appellee was sitting, injuring his neck and head. Verdict and judgment were for appellee in the sum of $1,550; hence this appeal.

In substance, the evidence showed that just after dark and immediately after a rain appellee was riding in the car of Pete Manos, going south on the well improved or paved highway near the town of Tennyson. Car trouble developed and it was pushed off the paved or improved portion of the highway on the graveled or caliche shoulder, some three feet from the paved or hard surfaced portion, which was about 18 feet wide and was to the left of the parked Manos car. The graveled or caliche portion of the highway was kept graded, was about 8 feet wide, and gradually sloped from the pavement to the drainage ditch on each side of the highway. Shortly after the Manos car parked, one Brown came along in his car and, for the purpose of aiding in starting the Manos car, drove his car off the paved portion of the highway about 5 feet on the caliche shoulder and from 3 to 10 feet behind the Manos car, but left the rear left portion of the Manos car, on which the rear or tail light was burning, open to the view of the drivers of cars approaching from the north. The rear or tail lights on the Brown car were in good condition and burning, and the head lights on both parked cars were burning. While thus parked and while appellee was sitting at the steering wheel of the Manos car attempting to start it, appellant approached from the north, driving according to the finding of the jury in excess of 45 miles per hour, and drove his car into the rear end of the Brown car, knocked it into the rear left end of the Manos car, or knocked it out of his path, and thence to the left and partly across the paved portion of the highway, where it stopped, headed north. Appellant's car then collided with the left rear end or side of the Manos car in which appellee was sitting, then turned left and stopped on the paved portion of the highway. Appellee's neck and head were injured, rendering him unconscious, and his neck was stiff at the time of the trial.

Appellant's car passed the car of one Henry, starting around it according to witness Brown about 9/10 of a mile north of the accident, just after coming over a rise or small hill, and then made its way back from the left side of the paved portion of the highway, on which it passed the Henry car, to the right side and then off the paved right portion on the caliche shoulder, and thence into the parked cars. The Henry car, coming at a fast speed, collided head-on with the Brown car, which had been knocked by appellant's car back into the paved portion of the highway and was then facing north. The Henry car then proceeded and probably struck the car of appellant, which after the collision with the Brown and Manos cars had turned left across the paved portion of the highway.

Appellant testified that lights may have been burning on the Brown and Manos parked cars but that he did not see the lights and did not see the cars until 50 or 60 yards from them; that he applied his brakes but was unable to stop his car before hitting them. That he did not know whether he hit more than one car, but that one car hit him after he came to a side position on the paved portion of the highway, which, according to the position of the other cars after the collision, was the Henry car. Appellant testified that he usually traveled between 45 and 50 miles per hour, but that he did not know how fast he was traveling immediately prior to the time he drove into the rear end of the parked car or cars; that he generally found that he was going faster than he thought he was going. And further as to his speed just prior to putting on his brakes, appellant testified, "I suppose 45 or 50 miles an hour, but I might have been going faster." His car was a heavy one, a 1937 model Lincoln. Appellant further testified that the collision occurred immediately after a rain and that it was foggy, and that the pavement was wet.

The jury found that the Brown and Manos cars were not parked on the paved portion of the highway; that the lights on each car were burning; that the preponderance of the evidence did not show the lights were not visible for 500 feet; but that the failure to have tail lights visible for 500 feet to the rear was not a proximate cause of the collision. The jury found that appellant was operating his car in excess of 45 miles per hour immediately prior to the collision, and such operation

was negligence and a proximate cause of the collision; that appellant's car struck the Manos car and caused the injury to appellee's neck and head.

■ The several contentions of appellant that the trial court erred in not instructing a verdict for him are not sustained. These contentions seem to be predicated upon the claim that since appellee was sitting in a parked car on the improved portion of the highway with both head and tail lights visible for a distance of less than 500 feet to the front and rear, in violation of Art. 798 of the Penal Code; that since the car or cars were parked on the improved portion of the highway in violation of Art. 827a, § 10, Vernon's Ann. P. C.; and that since appellant testified that he did not see the parked car or cars "until after the accident," the court should have instructed a verdict for appellant.

The jury found that the parked cars were not on the improved portion of the highway; which finding is fully sustained by the evidence. They also found that the failure to have head and rear lights visible for 500 feet (if they did so find) was not a proximate cause of the collision. The evidence fully sustains these findings.

■ Art. 827a, § 10, provides that "no person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of any incorporated town or city." Appellant's contention seems to be that since the car or cars were parked on the improved caliche shoulder, they were parked in violation of this statute; and that appellee was therefore guilty of contributory negligence per se in sitting in the car so parked, rendering appellant liable for only gross negligence in failing to see the parked car or cars before running into them. Manifestly it is the paved or hard surfaced portion of the highway which the statute prohibits the parking of vehicles on. It is a matter of common knowledge, as well as the evidence in the instant case, that the paved or hard surfaced portion of a highway is the "main traveled portion" of it. It is also common knowledge that the graveled or caliche shoulder to any paved or hard surfaced highway is the place vehicles are usually parked for temporary repairs or to change tires, etc. Art. 827a, § 10, Penal Code; Art. 798, Penal Code; Keith Co. v. Minor, Tex.Civ.App., 103 S.W.2d 241; Tarry Warehouse & Storage v. Price, Tex.

Civ.App., 76 S.W.2d 162. And the jury found all issues of contributory negligence predicated upon these statutes favorably to appellee.

■ The contention of appellant that the trial court erred in not declaring a mistrial because reference was made to the fact that he carried insurance, is not sustained.

While attempting to impeach witness Brown, appellant's counsel handed him a written statement purported to have been made by him. The following then transpired:

"Q. I want him to look at this statement. (Hands witness paper.) This sentence beginning here. (Indicating.) A. I didn't read the statement when I signed it; the adjuster read it to me.

"By Mr. Tuper for plaintiff:

"Q. The * * * who? A. The adjuster.

"By Mr. Kerr for the defendant: Now we ask the court to exclude the jury and ask the court to declare a mistrial and grant a continuance for the term."

The jury were retired and the objections were made to the statement and to the question of appellee's counsel, "The who?", as indicating that appellant carried insurance. The court overruled the motion to declare a mistrial, and refused to further instruct the jury in the matter, apparently concluding that it was not shown whose adjuster made the statement. Certainly nothing was said about insurance, but merely that the "adjuster" wrote the statement. Whose adjuster he was the jury were not informed; and the request to charge the jury that witness must not refer to the insurance adjuster would have been more harmful than helpful, because it would have more clearly called to the jury's attention that the matter related to insurance. Texas Cities Gas Co. v. Ellis, Tex.Civ.App., 63 S.W.2d 717; Jimmie Guest Motor Co. v. Olcott, Tex.Civ.App., 26 S.W.2d 373; Horton v. Benson, Tex. Civ.App., 266 S.W. 213, on writ of error, Tex.Com.App., 277 S.W. 1050; Russell v. Martin, 121 Tex. 488, 49 S.W.2d 699; Finck Cigar Co. v. Campbell, Tex.Civ.App., 114 S.W.2d 348.

■ The court did not err in the manner of submitting the issue of "unavoidable accident." The charge defined unavoidable accident, and the issue and the jury's answer read: "Do you find from a

preponderance of the evidence in this case that the collision of defendant's automobile with the Manos automobile was not an unavoidable accident? Answer: 'It was an unavoidable accident,' or 'It was not an unavoidable accident.'"

Answer: "It was not an unavoidable accident."

The objection was that the issue as submitted failed to place the burden of proof upon either appellant or appellee. If it did not place the burden on appellant, then he can not complain. However, we conclude that the issue placed the burden upon appellee to prove that the collision was "not an unavoidable accident," and was proper. It was so held in Gulf, C. & S. F. Ry. Co. v. Giun, Tex.Com.App., 116 S.W. 2d 693, 116 A.L.R. 795; Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956.

■ Nor do we sustain the contention of appellant that the trial court erred in its definition of the term "proximate cause," because it failed to include therein the element or theory of a new and independent cause. In this connection it is contended that since the Henry car hit appellant's car and the Brown car, and the Brown car hit the Manos car in which appellee was seated, that the Henry car was a new and independent agency. The evidence did not show, or was not sufficient as a jury issue to show, that the Henry car ever hit the Manos car in which appellee was sitting, or that it hit either the Brown car or appellant's car until after either one or the other or both had hit the Manos car causing the injury to appellee.

Appellant testified that one car hit him after he was out in the road, and after he had collided with the Brown car, but did not know which car. Brown testified to seeing appellant hit his car and then the Manos car. He testified with reference to all cars, and particularly to the Henry car as follows:

"Q. Did you see what happened to your car? A. Yes, I saw the back end of my car go up in the air.

"Q. How high did it go? A. The next time I saw it, it was possibly three or four feet higher than my head.

"Q. It went into the air? A. Yes, sir.

"Q. Then what happened? A. Mr. Jackson's car then hit the Manos car about the same as it did mine.

"Q. Now, with reference to the J. T. Henry automobile, how many automobiles did the J. T. Henry car hit? A. Mine was the only one it hit from the showing on the cars."

We do not regard the above evidence as raising any question of new and independent cause occasioned by the Henry car striking either the Brown or Manos cars so as to cause or contribute to cause the injuries to appellee.

■ The trial court correctly refused to submit requested special issues Nos. 1 to 4, submitting the issue of whether the Manos car was parked on the paved portion of the highway, because other issues submitted the same issues or questions.

■ Nor did the trial court err in refusing to submit a group of special issues as to whether the parked Brown car interfered with appellant's seeing the parked Manos car, and as raising an issue of contributory negligence on the part of appellee. The only issues of contributory negligence plead were that both the Brown and Manos cars were parked on the paved portion of the highway, and without sufficient lights. These issues were submitted to the jury and found favorably to appellee. Bilbrey v. Gentle, Tex.Civ.App., 107 S.W.2d 597.

■ Several assignments complain of the argument of counsel of appellee to the jury.

First, he expressed an opinion that if appellant's car was being driven at only 45 miles per hour, it could have stopped in half the distance across the court room. The court instructed the jury to disregard the statement. No reason appears in the record why they should not have done so.

■ Second, counsel for appellee argued that he could see no reason why appellant could not have stopped his car in 180 feet, or "at least to the extent that it would not knock the filling out of everything in front of it." This was a mere conclusion that appellant should have or could have stopped or slowed his car down within 180 feet so as not to destroy the cars it hit, and was reasonably inferable from the evidence. Appellant testified that he applied his brakes 50 or 60 yards back of the place of collision, which by mere mathematical calculation was 150 or 180 feet. There was no error in arguing such conclusions or inference from the evidence.

▮ Third, counsel stated: "I say he was not going at a speed less than seventy or eighty miles an hour, because he was passing another car, and the other car must have been going like hallelujah." These were conclusions reasonably drawn from the evidence. Witness Brown standing by the parked Manos car saw appellant's car pass the Henry car after it came over the rise or small hill, which was more than a thousand feet north from the parked Manos car; stated that both cars were driving at an "awful speed"; that appellant's car struck his, Brown's, car with such force that it was knocked in the air several feet higher than the witness's head; and appellant's car "then hit the Manos car about the same as it did mine (Brown's car)."

▮ Fifth, after numerous objections to his argument, counsel for appellee stated in the presence of the jury, "I have the right to draw any conclusion I please, and I wish the gentleman would get a piece of ice and sit on it and keep cool." Counsel for appellant complains that this argument was discourteous to counsel and prejudicial to appellant. Such by-play or side-bar remarks are perhaps not entirely courteous, but we see no possible harm done to appellant by them; at least no probable harm is shown by the record. 41 Tex.Jur. 748.

▮ Sixth, appellee's counsel stated to the jury, "the court says, 'if' you answer them, so and so, I want you to watch those 'if's' and answer as the court directs you so as not to write conflicting answers." The court instructed the jury to disregard the argument. This argument merely asked the jury to carefully answer the questions as directed by the court so as not to write conflicts. We regard such warning to the jury as proper; and if not, the court instructed them to disregard the argument, and the record presents no probable injury to appellant. The other argument complained of and of a similar nature, asking the jury to answer the questions in accordance with the court's instructions so the court could write a proper judgment, was proper argument.

Seventh, other arguments of counsel for appellee were complained of but after careful consideration we do not regard same as requiring a reversal of the case.

▮ In his opening argument to the jury, counsel for appellee discussed only the first five of the 28 special issues submitted. Appellant complains that under the rules counsel was required to fully develop appellee's case before requiring appellant to reply. The first five special issues submitted appellee's theory of recovery, or his entire case. The rules do not require counsel for plaintiff to argue defensive issues of defendant. He may leave these to defendant's counsel and reply thereto in closing argument. This counsel for appellee did.

All assignments briefed have been carefully considered and are overruled.

Judgment of the trial court is affirmed.

Affirmed.