## HIGHWAY INS. UNDERWRITERS v. STEPHENS.

### No. 2627.

Court of Civil Appeals of Texas. Eastland.

Feb. 6, 1948.

Rehearing Denied Feb. 27, 1948.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, for appellant.

Scarborough, Yates, Scarborough & Black, of Abilene, and Wilkinson & Griffin, of Brownwood, for appellee.

GRAY, Justice.

This is a workman's compensation case appealed from the District Court of Taylor County, Texas. The case was submitted to a jury on special issues, all of which were answered favorably to the plaintiff, whereupon the court rendered judgment in his favor for compensation for 156 weeks at $20 per week, to be paid in a lump sum from which the defendant appealed.

Plaintiff below, appellee here, was at the time of the injury an employee in the shop of Arrow Coach Lines at Abilene. He was formerly a resident of Brownwood and was employed in the Arrow shop there for some time before being transferred to Abilene. The injury occurred during the latter part of July, 1946. In February, 1945, while working for another party in Brownwood, appellee sustained a compensable injury to his back and by pleading and evidence, appellant sought to establish as a. fact that appellee's incapacity to labor was attributable to said former injury. However, the jury found that no part of appellee's present incapacity was due to such former injury. The facts in evidence and issues raised will sufficiently appear in subsequent parts of this opinion.

Appellant's first point complains of the alleged placing of the burden of proof on appellant in Special Issue No. 14, which reads as follows:

"What percentage, if any, of the plaintiff's incapacity if any, do you find, from a preponderance of the evidence, is due to his injury of February, 1945? Answer in percentage if any." The jury answered: "None."

Timely objection to said issue as framed was made. The objection was renewed in the motion for new trial. Appellant relies, in addition to other authorities, upon the case of Texas Employers' Ins. Ass'n. v. Stephens, Tex.Civ.App., 22 S.W.2d 144–146, from which we quote:

"The trial court in submitting the case put upon appellant 'the burden of proof to

establish the affirmative of special issues,' indicating them by numbers, as to whether the injury Stephens received on the 9th day of September, 1926, in Oklahoma, and whether Stephens suffered an injury from a fall from an automobile on March 20, 1928, as testified to, and whether said injuries, or either, caused in whole or in part the incapacity from labor, complained of, and, if the jury found in the affirmative on said issues, then to find the extent or degree that such former injury caused Stephens' incapacity to labor thereafter."

The facts in the cited case and the injuries received were strikingly similar to those in the case at bar, including a prior injury. But the manner of submitting said case to the jury was so divergent that said cited case furnishes little, if any, support for appellant's assignment. We are in accord with the holdings and disposition made by the El Paso Court of said former case. In said case, the trial court "specially" charged that the burden of proof as to a previous injury was on the insurer. Special Issues were submitted inquiring as to said prior injury, whether the plaintiff suffered an injury from a fall, from an automobile on March 20, 1928, and whether said injuries, or either, caused in while or in part, the incapacity from labor complained of, and, if the jury found in the affirmative on said issues, then to find the extent or degree that such former injury caused plaintiff's incapacity to labor thereafter, in all of which issues, designated by numbers, the burden was squarely placed upon the insurer. The error is obvious. But the charge in the instant case was not subject to such objection. No charge on the burden of proof was given. However, the first twelve issues were so framed as to place the burden of proof on plaintiff and no question is raised as to those issues. Issue No. 12 was: "Do you find from a preponderance of the evidence that Charlie Stephens was not suffering any incapacity to labor on or about 28 July, 1946, as a natural result of his injury in February, 1945?" The jury answered: "He was not." Had the jury answered that he was suffering some incapacity by reason of said previous injury, then it would have been necessary for the jury to have answered Special Issue No. 14. Had the jury answered that Stephens was injured in some per cent, such answer would have contradicted the answer to No. 12, and a mistrial might have resulted. But the answer to No. 14 was in harmony with that to No. 12.

In the case of Texas Indemnity Co. v. McCurry, Tex.Com.App., 41 S.W.2d 215, 218, 78 A.L.R. 760, by the Commission of Appeals, approved by the Supreme Court, and cited by appellant, the issue involved was No. 5, and as follows: "Was Dan McCurry affected with tuberculosis at the time of receiving the injury, if any?" By specific charge, the burden of proof was placed upon the defendant. The error is apparent. But the issue as submitted was different from No. 14 in the instant case. No. 12, in the instant case, was more nearly analogous, where the burden of proof was correctly placed on the plaintiff.

Appellee counters said Point One as follows: "Since the jury found that appellee was not suffering any incapacity as a result of his former injury, the form of the issue as to the percentage of such incapacity became immaterial."

We quote from Rule 434, Rules of Civil Procedure:

"Provided, first, that no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court; * * *". See also Jones v. Rainey, Tex.Civ.App., 168 S.W.2d 507, 509.

In Brokaw v. Collett, Tex.Com.App., 1 S.W.2d 1090–1092, it is said:

"Immaterial issues answered by the jury may properly be disregarded by the court as surplusage, and not considered by the court in rendering judgment. Millers' Indemnity Und. v. Schrieber, Tex.Civ.App.,

240 S.W. 963; Schaff v. Morris, Tex.Civ. App., 227 S.W. 199; McGee v. Cage, Tex. Civ.App., 283 S.W. 283. Besides, the undisputed evidence shows that L. G. Collett had no title to or right of possession in the property. Therefore the answer with reference to the homestead matter became immaterial."

▆ The jury in the instant case having found, in answer to Issue 12, that plaintiff was suffering no incapacity from his previous injury, the answer to Issue 14 should be treated as surplusage, and was so treated by the trial court in rendering judgment.

Reverting to the rule quoted above, appellant has not suggested wherein it was injured by the submission of Issue 14 in the manner in which it was submitted, and this court fails to perceive wherein the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case, or that appellant was thereby probably prevented from making a proper presentation of the case on appeal to this court. We cannot assume an injury in the absence of any fact or circumstance to indicate it.

"* * * the rules of procedure in the courts should be so framed as to secure substantial justice, and any oversight of the court or of counsel, which, within certain limitations, is not calculated to operate to the prejudice of the parties, and has not so operated, should be disregarded." Silliman v. Gano, 90 Tex. 637; 39 S.W. 559, 561, 40 S.W. 391; Traders & General Ins. Co. v. Jenkins, 135 Tex. 232, 141 S.W. 2d 312, 315.

Rule 434 is in harmony with the holding of the Supreme Court quoted above.

As said by the Commission of Appeals in Traders & General Ins. Co. v. Jenkins, supra:

"There is an increasing tendency upon the part of the courts not to reverse a case because a form of submission of an issue is subject to objection, unless, of course, the issue is objectionable to the extent it denies to one of the parties a valuable right. It may be added that by the suggestions made from time to time that one form of issue is less objectionable than another, or that one form is preferable to another, it is not meant to be implied that such form is exclusive, or that a prior suggested form is erroneous. See Federal Surety Co. v. Smith, [Tex.Com.App., 41 S.W.2d 210] supra; Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956; Gulf, C. & S. F. Ry. Co. v. Giun, supra, [Tex.Com.App., 131 Tex. 548, 116 S.W.2d 693, 116 A.L.R. 795]."

Had said issue No. 14 been submitted in such form as not to have been objectionable to appellant, it would certainly be far-fetched to assume that the jury would have answered it in such way as to contradict their answer to Issue No. 12.

▆ At the risk of repetition, we again refer to the form in which said contested issue was submitted. "What percentage, if any, of the plaintiff's incapacity, if any, do you find from a preponderance of the evidence, is due to his injury of February, 1945?" It will be noted that the words, "What percentage," are qualified by, "if any," and "plaintiff's incapacity" is also qualified by "if any." The words, "if any," as here used, import "condition." While the issue was not submitted in the exact form in which conditional issues are usually submitted, yet, because of the qualifications, "if any," it was in effect a conditional submission. The jury should not have answered Issue 14, after having answered in response to Issue 12, that, "He was not" suffering any incapacity to labor on or about 28 July, 1946, as a natural result of his injury in February, 1945. The answer to Issue 12 showed no percentage in incapacity by reason of the previous injury, and the answer to Issue 14 may be regarded as surplusage or as immaterial. As very much in point, we quote from the Texarkana Court in the case of Southern Underwriters v. Mowery, Tex.Civ.App., 147 S.W.2d 834, 842:

"Special issue No. 41 inquired whether 'partial incapacity,' sustained by appellee, if any, is not temporary. In answer to special issues Nos. 10, 27 and 35 (not accompanied by the complained of instructions), the jury found that appellee had

not sustained partial incapacity. When the jury found that appellee had not sustained partial incapacity, special issue No. 41 inquiring as to the duration of partial incapacity, if any became immaterial.".

We overrule appellant's Point One.

Appellant's second point alleges as error the refusal of the trial court to set aside the jury answer to Issue 12, that plaintiff was not suffering any incapacity from his injury of February, 1945, for the alleged reason that such answer was without support in the evidence. The third point likewise alleges error in the refusal of the trial court to set aside the jury answer to Issue 14, that none of plaintiff's incapacity was due to his injury of February, 1945, as being without support by the testimony. We have held above that the answer to Issue 14 was immaterial. But should we be mistaken in this holding, then we think there was ample support in the evidence for the jury finding in response to both Issues 12 and 14. Being closely related, the two points will be considered together.

J. R. Thorn, driver of the bus containing the flat tire, was the first witness. He testified that on a Sunday afternoon about five o'clock in the latter part of July, 1946, he drove said bus into the Arrow Coach Lines shop at Abilene; that plaintiff, Charlie Stephens, was on duty in said shop that he called plaintiff's attention to said flat tire; that he saw plaintiff take said flat tire out of the bus, and after remounting another tire on a wheel, he saw plaintiff put it back in the rack, which was the floor of the bus; that at said time, the witness was in a far end of the shop making up a report of his run, but could plainly see plaintiff perform said duties. He left the shop before plaintiff left. The next afternoon, the witness came to the shop to get said bus for his usual trip from Abilene to Austin and had a conversation with plaintiff, but over objection, what plaintiff said to him was ruled out. However, he was permitted to testify that plaintiff "was stooped over" and not as spry as usual.

The plaintiff next testified in his own behalf. We can only notice the high lights in his testimony. But he testified that from June 1, 1946, to the latter part of July, he worked seven days each week and about nine hours each day; that some of the work was heavy, such as changing bus tires; that a wheel with inflated tire weighed 175 to 200 pounds; that he lost no time and suffered no incapacity from his previous injury during said time; that while replacing the wheel with inflated tire on the occasion mentioned, he suffered an injury to his back, which caused him great pain; that he went home thirty minutes earlier than usual and his wife applied a heat pad to his back, but this and other aids gave him no relief and he could not sleep. However, he returned to his work the next day and from day to day until August 14th; that he did not immediately tell his foreman about his injuries because he did not want to lose his job; that he had sold his home in Brownwood and had gone to considerable expense in moving to Abilene for the best job he ever had and which, he hoped, would be permanent; that from the date of his injury until August 14, he did his work, but all the while suffered excruciating pain and could not sleep at night. His testimony as to the fact of having suffered such injury was not controverted, except indirectly by questions as to why he had not reported it sooner.

Appellant further testified that on August 15, he took an early morning bus to Brownwood for treatment. Arriving there, he went to the home of his sister, Mrs. Harry Hames, who took him to Dr. Maxwell's office; that he told Dr. Maxwell "to fix him up" so that he could return to Abilene on the next bus and to work the next day; that Dr. Maxwell informed him that he was in a bad condition and could not go back to work; that Dr. Maxwell also told him that he could not give him the necessary treatment; that he must see a specialist in that type of injury; that Dr. Maxwell thereupon called Dr. Legg, at Dallas, and arranged for plaintiff to go to Dallas; that Mrs. Hames and plaintiff's wife took him to Dallas; that upon arriving there he was in such condition that they could not X-ray him immediately, but put him in a hospital for several days. (Dr. Legg testified by deposition, which will be noticed later.)

Said Mrs. Harry Hames testified orally, describing the appearance of plaintiff when he appeared at her house on the morning of August 15th; that she put him to bed and tried to relieve his pain and extreme nervousness, but to no avail; that she took him to the doctor's office, and on his advice, took plaintiff to Dallas. Her testimony as to plaintiff's bad condition and suffering was fully corroborated by that of her husband, Reverend Harry Hames, pastor of a church in Brownwood.

In his deposition, Dr. Legg testified that he specialized in Orthopedic surgery, and was associated in the practice with another orthopedic surgeon, Dr. Driver; that when plaintiff arrived at his office on August 17, 1946, said patient was in such pain and distress that he put him in Baylor Hospital a few days to get him into condition for examination and X-ray; that the X-ray disclosed a herniated disc between the fifth lumbar vertebra and the first sacral segment on the right. Getting away from technical terms, he described the "disc" as the cushion between the vertebra, and "herniation" as a disclocation from its normal location; that such herniation would cause severe pain by impinging on the spinal nerves which came together forming the sciatic nerve. Said X-ray pictures were attached to the deposition. Plaintiff returned to Brownwood and Abilene shortly thereafter.

Dr. W. R. Snow, Chief of Staff of Hendrick Memorial Hospital at Abilene, and practicing general medicine and surgery, testified that he made a general examination and X-ray of plaintiff, which X-ray pictures were exhibited in court. As explained by the witness, there was a herniation between the fifth lumbar vertebra and the sacral, that is the disc or cushion had been pushed from its normal position and the vertebra rested bone upon bone instead of on a cushion; that such condition would cause a stiffness of the back and produce pain because the sciatic nerve was not protected but impinged by lack of such cushion. His X-rays and diagnosis corroborated Dr. Legg. The picture showed no herniation as to the fourth lumbar. Dr. W. A. V. Cash of Abilene, an X-ray specialist and surgeon of wide experience in the Army and private practice, testified that he had examined the plaintiff and the X-ray pictures. His testimony was in complete agreement with that of Dr. Snow. He further explained that herniations of said character were more frequently caused by straining and pushing while in "a jack-knife position," rather than by a blow over the region.

The evidence outlined above is given to show the nature and extent of the injuries received by plaintiff in July, 1946.

We shall now discuss said previous injury of February, 1945. While the two injuries were to the back and in the same general locality, they were different in character. Dr. E. L. Maxwell, who examined and treated plaintiff shortly after said first accident, diagnosed the injury as "ruptured disc of the fourth lumbar vertebra." He did not X-ray the patient. Later at the instance of the insurer, different from appellant here, plaintiff was examined and X-rayed by Dr. H. B. Allen, of Brownwood. His diagnosis was, "hypertropic lipping of the lumbar spine," in a moderate degree. When asked on direct examination to explain the language used, he answered: "It is the lipping of the spine as compared with the normal vertebra, that is the edges are smooth and the lipping is an extension of the bone on the edges. It is a bonal formation." There had been medical testimony that there had been injury to the bonal formation of the vertebra and the "lipping" was an effort on the part of nature to repair the damage. The second injury had been explained by Drs. Snow and Legg as a "herniation" or dislocation of the disc between the fifth lumbar vertebra and the sacral, further technically described as "herniation of the nucleus polposus." When asked if lipping was the same as herniation of the nucleus polposus, Dr. Allen stated that it was not. The terms "nucleus polposus" and "disc" were explained as meaning the same, and to laymen, known as the cushion between the vertebra. Dr. Allen further testified that polposus was usually caused by injury, whereas lipping was "part of an arthritis of the spine," caused usually by an infec-

tion; that lipping was a hard formation and polposus was not, and that lipping might cause pain. He further testified that he found no evidence of herniation of the nucleus polposus in plaintiff at said time, but that the "lipping" may have been aggravated by said former injury. That he was of the opinion that plaintiff had a ten per cent disability. In this connection, it was in evidence that Dr. Maxwell had previously treated plaintiff for rheumatism and had advised him to have his teeth extracted. In harmony with the testimony of Drs. Maxwell and Allen, Dr. Snow testified that in his opinion that if said first injury to plaintiff had resulted in a herniated disc, he could not have gone back to work.

The evidence showed that after a complete rest, plaintiff did go back to work, and in March, 1946, he began working for Arrow Coach Lines at their shop in Brownwood, where he continued until transferred to Abilene on June 1, 1946. It was in evidence that plaintiff returned to his normal weight. Appellant's witnesses admitted that his work was satisfactory to his employer. Appellee testified that while he suffered some pain after going back to work, the pain had left him before the transfer to Abilene.

From the medical testimony set out above, it is evident, and not denied, that said first injury was not of the same character as the second one; that according to Dr. Maxwell's testimony, it affected the fourth lumbar vertebra instead of the fifth as in the second injury; while Dr. Allen, the insurer's doctor, saw no evidence of herniation but said the injury was due to lipping; that it yielded to rest and treatment and was curable. This finds strong support in the fact that Stephens went back to hard work for Arrow Coach Lines, doing his work well, receiving an increase in his wages and a promotion to a better job at Abilene, where his services were entirely satisfactory until the second injury. It is significant that there was no medical testimony that plaintiff's incapacity following the second injury was in any degree attributable to the former injury. The case of Texas Employers Ins. Ass'n v. Griffis, Tex.Civ.App., 141 S.W.2d 687, 690, is very similar to the facts and issues in the instant case. We quote from said decision as follows:

"The fact that appellee had returned to work after his injuries, and performed his work as usual, and without complaint, is evidence from which anyone would conclude that he had recovered. That his testimony that he was well at the time he sustained the last injury related to a fact and not an opinion is well settled. Parker v. Harrell, Tex.Civ.App., 212 S.W. 542; Armour & Co. v. Tomlin, Tex.Civ.App., 42 S.W.2d 634; St. Louis S. F. & T. Ry. Co. v. Carter [Tex.Civ.App.], 275 S.W. 224."

We think the evidence was ample to support the jury answers to Issues 12 and 14. We, therefore, overrule appellant's second and third points. The judgment of the trial court is affirmed.