GILMER v. GRIFFIN et al.

No. 12587.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 13, 1954.

Rehearing Denied March 3, 1954.

Morriss, Morriss, Boatwright & Lewis, San Antonio, Jim W. Weatherby, Kerrville, for appellant.

Reynolds Cate, House, Mercer & House, San Antonio, Gordon L. Hollon, Boerne, for appellees.

NORVELL, Justice.

This is an automobile collision case in which judgment was rendered against Claud Gilmer, the defendant below. Gilmer's primary contentions are that the evidence was insufficient in law and in fact to support the jury's findings that he was negligent in certain particulars and that the answers to some of the special issues are conflicting. Certain additional contentions are brought forward, which will also be discussed. In order to dispose of the two contentions first mentioned it is necessary to make a statement of the undisputed facts and the jury's findings.

The collision occurred during the night of August 20, 1950, in Kendall County, on U. S. Highway No. 87, between the towns of Boerne and Comfort, Texas, near a roadside tavern known as Clasby's Place, about two and a half miles south of Com-

fort. The tavern was about fifty feet back from the highway and to the east thereof. There was a gravel driveway or apron between the edge of the highway and the tavern building. The highway runs in an approximate straight line in the vicinity, but there is a rise or crest in the road a short distance south of the south end of Clasby's building, which rise cuts off the view of the driver of an automobile approaching from the south and traveling in a northerly direction. The hard-surfaced portion of the road was about twenty-four feet in width, making a lane of twelve feet on each side of the center stripe for the north-bound and south-bound traffic lanes. According to one witness, the existence of the rise in the road and the location of the tavern adjacent thereto, with people coming and leaving therefrom and driving onto the highway, presented a hazardous highway condition which had resulted in some six accidents in the past eight years.

On the night of the collision, Gilmer, accompanied by his wife, was driving in a northerly direction along the highway when he topped the hill immediately south of Clasby's. Then, according to his testimony, he saw a car traveling slowly out onto the pavement about 100 feet ahead of him. He applied his brakes and his car swerved onto his left-hand side of the road where it collided with an automobile traveling in a southerly direction and being driven by appellee (and plaintiff below) Willie E. Griffin. In the automobile with Griffin at the time were his wife, Genevieve, and their minor son, Arthur William Griffin.

The jury found that just before and at the time of the collision Gilmer failed to have his car under reasonable and proper control; that he failed to keep a proper lookout, and that he failed to drive his car upon his right half of the roadway. As to each of the findings above mentioned, the jury found the accompanying issues of negligence and proximate cause against the appellant.

As the collision occurred on the west side of the pavement, that is, upon Griffin's traffic lane, there appears to be no evidence

that he was guilty of negligence proximately causing the collision. Nevertheless, perhaps out of an abundance of precaution, the trial judge submitted the issues of excessive speed and proper lookout as contributory negligence issues. Both were answered in favor of appellees.

The jury also found "that just before the collision in question a car was driven onto the highway ahead of the defendant, Claud Gilmer, in his lane of traffic * * * in such a way as to produce danger of collision between the Gilmer car and said car," but that the driving of such car onto the highway was not the sole proximate cause of the collision and, in effect, that it did not create an emergency. The jury specifically refused to find that Gilmer was acting in an emergency, as that term was defined by the court, when his car "turned to the left across the highway." The jury further found that the collision was not the result of an "unavoidable accident," and that the following specific charges of negligence made against Gilmer were not established by a preponderance of the evidence: that he was operating his car at a rate of speed in excess of 55 miles per hour (the night-time statutory limit), or at a greater rate of speed than a person of ordinary prudence would have driven under the same or similar circumstances, and that he was driving with defective brakes.

■ In our opinion, the findings of the jury may be reasonably reconciled and the theory upon which the jury made its findings is reasonably clear. Appellant's substantial defense was that the action of a third person was the sole cause of the collision, or, perhaps, stated another way, that the collision was an "unavoidable accident," in that neither the negligence of Gilmer nor Willie E. Griffin contributed to the occurrence. The evidence is sufficient to support the theory that appellant's car skidded onto the left-hand portion of the highway through no fault or negligence of his, but appellant's position here (in view of the jury's findings) involves the contention that as a matter of law he was not guilty of negligence despite the jury's findings to the

contrary. It is urged that the evidence compels holdings that appellant, just before and at the time of the accident, had his car under reasonable and proper control; that he maintained a proper lookout, and that his failure to drive his car upon his right-hand side of the road was excusable. While it is our province to decide whether or not there are disputed fact issues in the case, it is the function of the jury to decide disputed facts. After a careful consideration of the evidence disclosed by the record of this case, we have concluded that the jury's findings are binding upon us and that it would be an unwarranted assumption of authority on our part to set them aside. Gilmer v. Griffin, Tex.Civ.App., 1952, 265 S.W.2d 250; 3–B Tex.Jur. 370, Appeal and Error, §§ 911, 912, and authorities therein cited. We hold that there is no conflict in the jury's findings and that such findings have support in the evidence.

■ We are further of the opinion that the trial court did not err in refusing to submit appellant's requested special issues Nos. 6, 7, 8 and 11. The substance of these issues was an inquiry as to whether or not the turning of his automobile onto the left-hand side of the highway was involuntary on the part of Gilmer.

With reference to his actions immediately after the car was driven onto the highway ahead of him, appellant testified as follows:

"Q. What did you do? A. I hit the brakes on the wheels very slightly. I expected him to get under way and get out of danger, and instead of that, he seemed to stop all at once. At that time I put my brakes on hard or had to run into him, if I didn't do something. The car went or veered to my left, and the steering wheel at that point—

"Q. You lost control? A. Yes, sir, there was an emergency, unexpectedly; I didn't want to run into him. At that point when I saw he was not moving away, there was an emergency arose and I put the brakes on as hard as I could; and the wheel lunged in my hand.

and veered to the left. Up to that point, I was well in my right hand side of the road."

While this testimony supports the theory that appellant's car swerved over onto the left-hand side of the highway against his volition, this theory of defense was submitted to the jury by means of the "emergency" and "unavoidable accident" issues. The requested issues were evidentiary, rather than ultimate in nature, and at most constituted nothing more than various phases or different shades of issues properly submitted by the court. Rule 279, Texas Rules of Civil Procedure.

■ We are also of the opinion that no reversible error is disclosed by appellant's complaints of the method employed by the trial court in submitting the damage issues to the jury. Further, the damages awarded by the jury were not excessive. Willie E. Griffin, as next friend of Arthur William Griffin, was awarded the sum of $7,200 for injuries sustained by said minor, and $2,224.89 was awarded to the parents for damages resulting from their son's injuries and for doctor and hospital bills. Although the evidence shows conclusively that Genevieve Griffin, the wife and mother, suffered severe injuries, the jury refused to allow her a recovery for pain and suffering or any other element of damage, except hospital bills. The head injuries sustained by the minor were severe and damaging. It cannot be said that the jury was motivated by prejudice, or passion in fixing the amount of damages.

■ Appellant complains of the action of the trial court in admitting in evidence certain statements of Dr. Diamond, a witness for appellees, as to the nature and extent of the injuries sustained by the minor, Arthur William Griffin. The child was eleven months old at the time of the collision and, as a preliminary matter, Dr. Diamond, who was employed to make an examination of the child and testify with reference to certain X-ray pictures, recited certain matters relating to the history of the child's injuries and symptoms. His state-

ments may not have been in exact accordance with the testimony of others as to the child's injuries, so as to make them entirely cumulative, but, however that may be, it is readily apparent that Dr. Diamond's opinions and conclusions as an expert were based primarily upon his examination of X-ray pictures taken of the child's head. There was no doubt as to the severity of the child's injury. According to Dr. Diamond, the X-rays presented "a very disturbing picture," and "the history (of the case) was (considered) relatively unimportant" by the doctor in arriving at his final diagnosis and prognosis. This view was stated to the jury by the doctor, and under these circumstances, the error, if any, resulting from Dr. Diamond's preliminary statements as to the history of the case was harmless. Rule 434, Texas Rules of Civil Procedure.

Charles H. Malbert, a witness for appellees, related that immediately after the collision in question he came upon the scene. He testified as follows:

"I saw a young man limping and walking around the (Griffin) car, and at the same time the door was either open or being opened, and a woman (Mrs. Griffin) staggered out, blood streaming down her face. * * * She started to walk towards me and hollered 'where is my baby, where is my baby,' and as I remember this baby was taken by some one; that boy handed the baby to a lady that came across the pavement. * * * I heard her (Mrs. Griffin) say 'it was not my husband's fault, it was not my husband's fault.'"

 This last statement was objected to as being hearsay and self-serving. While caution should be exercised in admitting self-serving declarations in the form of conclusions as res gestae statements, the rule is that when it appears that the transaction is in effect voicing itself, rather than a witness speaking, the statement should be received in evidence. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. The question of admission or rejection is primarily a matter for the trial judge and

his ruling will not be disturbed except for an abuse of discretion. City of Austin v. Johnson, Tex.Civ.App., 195 S.W.2d 222. Here the disputed statement was made immediately after the collision and by a woman who herself had suffered severe and painful injuries. In our opinion, the trial judge did not abuse the discretion vested in him by law. We might also add, as heretofore indicated, that we find no evidence indicating that Willie E. Griffin was in any way negligent in the way he drove or handled his automobile. Mrs. Griffin's statement, therefore, could not have prejudiced appellant.

During the course of the cross-examination of the witness Joseph R. Carnesi, a brother of Mrs. Griffin, the following occurred:

"Q. Can you describe how the front end of your brother-in-law's car was after the collision? A. It was completely demolished, the insurance company gave him another car—

"Q. You mean Mr. Griffin's insurance company gave him another car for it, is that it? A. They gave him something, he didn't get the whole amount, he still had to pay something on the one he got.

"Q. In other words, they compensated him for his car? A. Yes sir.

"Q. He had insurance on his car? A. He was not finished paying for it, he had to have insurance to get it financed. They won't let you buy one unless you had insurance.

"Q. Do you know what insurance company it was? Did you have anything to do with handling it or do anything about it? A. No sir.

"Q. He got the insurance, that is what he told you; did he tell you that they compensated him for it? A. I know he got another car and was still paying on it after the wreck.

"Q. You know his insurance company settled with him? A. They

didn't settle completely with him, I don't know anything about it.

"Q. You first said the insurance company gave him another car? A. That's right."

While the original mention of insurance was a volunteer statement on the part of the witness, appellant did not at that time request that it be stricken but, on the contrary, developed the point that appellee's car was covered by insurance. Later appellant offered to testify as follows:

"Q. Mr. Gilmer, state whether or not you had any kind of insurance on the automobile you were driving? A. No sir, I had no insurance on it of any kind.

"Q. You had no insurance of any kind? A. No sir, I didn't even have fire insurance on it.

"Q. You had none at all? A. No sir, I had no public liability or property damage either."

■ The proffered testimony was excluded (and appears in the record by bill of exception), whereupon appellant moved for a mistrial on the ground that one of appellees' witnesses had voluntarily injected the matter of insurance into the case, and that prejudice would result to appellant unless he was allowed to show that he had no insurance. The trial court overruled this motion and was correct in so doing. The question of whether or not the appellant carried public liability insurance was wholly immaterial to any issue the jury was called upon to decide. Testimony that he had none was therefore properly excluded. The fact that a witness volunteered the statement that appellee had insurance which evidently covered collision damage to his own vehicle cannot operate to vary the rule.

■ Appellant contends that the trial court committed reversible error in submitting the issue of unavoidable accident in the following terms, viz.:

"Do you find from a preponderance of the evidence that the collision in question was not an unavoidable accident?

"Answer, 'It was not an unavoidable accident,' or, 'It was an unavoidable accident.'"

The form used was essentially that recommended by the Supreme Court in Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956. In a later case, Gulf Colorado & Santa Fe Ry. Co. v. Giun, 131 Tex. 548, 116 S.W.2d 693, 116 A.L.R. 795, opinion by Judge Taylor, who also wrote the opinion in the Richardson case, the Supreme Court suggested another form as being an improvement over the suggestion made in its former opinion. However, the Giun case is not authority for the proposition that a submission in accordance with the Richardson case constitutes a reversible error. In fact, the case holds that a submission calling for a "yes" or "no" answer is not reversible error, despite the use of the confusing double negative, which the forms suggested in both the Richardson and Giun cases seek to avoid. For another form of submission, see Houston Oxygen Co. v. Davis, Tex.Civ.App., 145 S.W.2d 300, Id., 139 Tex. 1, 161 S.W.2d 474, 140 A.L.R. 868.

The form of the Giun case, being a later expression of the Supreme Court, should, and undoubtedly will, be followed by district judges in submitting the "unavoidable accident" issue, but the failure to follow such form exactly, perhaps caused by overlooking the case, does not necessarily constitute reversible error.

Appellant has presented a number of points, all of which have been carefully considered and are overruled. In the final analysis, this is essentially a fact case. It was carefully tried by the district judge and correctly submitted. The jury findings determine the disposition of the case, and the judgment based thereon is accordingly affirmed.